**Danny HOBSON, Plaintiff/Appellee,**

v.

**FIRST STATE BANK, A Banking Corporation, Defendant/Appellant.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Aug. 28, 1990.

Application for Permission/to Appeal
Denied by Supreme Court
Nov. 5, 1990.

Joel Porter, Burch, Porter & Johnson, Memphis, and Edward B. Johnson, Wilder

& Johnson, Somerville, for defendant/appellant.

Charles J. Swayze, Jr., and James Y. Dale, Whittington, Brock, Swayze and Dale, Greenwood, Miss., and G. Hite McLean, Jr., Memphis, for plaintiff/appellee.

TOMLIN, Presiding Judge, Western Section.

This appeal involves the allowance of attorney fees. The appellees, Charles J. Swayze, Jr. and James Y. Dale,[1] Mississippi attorneys, filed the underlying lawsuit in the Circuit Court of Tipton County in January, 1986 on behalf of their client, Danny Hobson, against First State Bank ("Bank"). They sought to recover $2,200, the amount of a check written by Flowers, Deverell and Crawford of Covington, Tennessee, presented to and subsequently dishonored by said Bank. Hobson also sought class action certification for his suit, which was subsequently granted. The present litigation was initiated by class attorneys filing a petition for attorney fees and expenses and the disbursement of all funds pertaining to the representation of Hobson and his class. Counsel for certain class members (hereafter "Respondents") filed their objection to class attorneys' petition seeking to have the petition dismissed as to them on the ground that they were represented by their own counsel. Respondents also objected to certain specific items for which compensation was sought. Following a full hearing, the trial court ordered that class attorneys be awarded attorney fees in the amount of $439,356.12, said amount to be paid from a common fund involving the entire class, including those class members represented at the underlying trial by counsel of their own choosing.

Respondents' appeal presents the following three issues to be resolved by this Court: (1) whether the members of a class who employed their own counsel to enter an appearance on their behalf may be required to pay attorney fees of class attorneys who created the common fund for the benefit of the class; (2) whether the nonresident lawyers who fail to comply with Rule 19 of the Tennessee Supreme Court Rules may be compensated for services while in violation of said Rule; and (3) whether the award of attorney fees was made on good and sufficient evidence. We find no error and affirm.

This Court would like to state at the outset that the order entered by the trial court in the case under consideration—in essence, a memorandum opinion and order—is one of the most helpful and most extensive trial court memoranda this Court has seen in a long time.

A procedural history of this litigation is in order before addressing the issues presented. Those desiring more knowledge about the facts underlying this litigation are referred to the reported case of *Hobson v. First State Bank*, 777 S.W.2d 24 (Tenn.App.1989).

The class in this case consisted of certain payees of checks drawn on the Flowers checking account with First Bank. The checks were presented to and subsequently dishonored by Bank. Following the filing of the lawsuit on behalf of Hobson and the certification of the lawsuit as a class action, Petitioners were appointed class attorneys. The trial court's order notifying the proposed class members provided as follows:

If you do not request exclusion, you may, if you desire, enter an appearance through counsel of your own choosing. The Plaintiff is represented by Charles J. Swayze, Jr., and James Y. Dale of Whittington, Brock, Swayze and Dale, P.O. Box 941, Greenwood, Mississippi, 38930; telephone number (601) 453-7325. The Defendant is represented by Walker T. Tipton, P.O. Box 147, Covington, Tennessee, 38019; telephone number (901) 476-9841 and Alan R. Strain, Suite 3130-100 North Main Building, Memphis, Tennessee, 38103; telephone number (901) 523-2364. If you do not request exclusion, and you do not enter an appearance through counsel of your own choosing, the above named counsel for Plaintiff will represent your interest in this case.

---

1. Appellees will hereafter be identified as "class attorneys" in this litigation.

Respondents did not request to be excluded from the class, but instead, chose to enter an appearance through their own counsel.

In the underlying action the trial court granted partial summary judgment on behalf of Hobson and the class as to checks dishonored by Bank on "Day 1" of a three-day run. After this Court denied the granting of an interlocutory appeal pertaining to summary judgment on "Day 1," the case was remanded to the trial court for trial. The jury returned a verdict in favor of Hobson and the class as to the "Day 2" checks but found in favor of Bank as to the checks dishonored on "Day 3." The total amount of the judgment entered on behalf of Hobson and the class was $738,102.95, plus pre-judgment interest. After this Court affirmed the judgment, Bank's application for permission to appeal to the Supreme Court was denied. The petition serving as the basis for the present litigation was filed by class attorneys shortly thereafter.

## I. THE COMMON FUND DOCTRINE

The underlying litigation resulted in a substantial judgment for Hobson and his class against Bank, reported at 777 S.W.2d 24 (Tenn.App.1989).

In the action for assessment of attorney fees for class attorneys, the obvious source of fees is the common fund that has been collected or assembled in large measure as a result of the efforts of class attorneys. Judgment against defendant Bank has been satisfied by depositing with the clerk of the trial court the amount of $1,109,-113.07.

■ The record reflects that there were approximately eighty separate checks to various payees that were wrongfully dishonored by Bank. Some of the payees were represented by counsel, some were not. The trial court concluded that the funds belonging to the entire class—the common fund—should be the source from which class attorney fees and expenses were to be paid. As a general rule, in situations in which the work of an attorney proves useful to persons other than his own client, the attorney must look only to

his own client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others. *Travelers Ins. Co. v. Williams*, 541 S.W.2d 587 (Tenn.1976). An exception to this rule is made when a common fund has been created, as in a class action. *See Boeing v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir.1977); 42 ALR Fed. 134, § 2(a) (1979). The court in *Vincent v. Hughes Air West, Inc.*, aptly explained the "common fund doctrine" as follows:

> The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees. The doctrine is "employed to realize the broadly defined purpose of recapturing unjust enrichment...." That is, the doctrine is designed to spread litigation costs proportionately among all the beneficiaries so that the active beneficiary does not bear the entire burden alone and the "stranger" beneficiaries do not receive their benefits at no cost to themselves.

557 F.2d at 769.

■ It is the general rule that allowing attorney fees for one party to be charged against a general fund where other innocent parties are represented by other counsel will not be allowed. *See In re Estate of Korthe*, 88 Cal.Rptr. 465, 9 Cal.App.3d 572 (1970). Under this rule, members of a class may avoid paying attorney fees to class attorneys out of that portion of the fund to which they are entitled by employing their own attorneys to make appearances on their behalf and to represent their interests in the matter. However, as pointed out in *Vincent*, the general rule that third parties can "purchase immunity" by hiring their own attorneys and participating in the litigation poses "greater problems." 557 F.2d at 771. Furthermore, in *Travelers Ins. Co. v. Williams*, the court recognized the general rule that the common fund doctrine is not applied against

those who have employed counsel of their own choosing to represent their interests. 541 S.W.2d at 590.

In recent years the courts have created an exception to this general rule where the contribution of the original or lead attorneys and the attorneys hired by the "stranger" beneficiaries are unequal. *See Doherty v. Bress*, 262 F.2d 20 (D.C.Cir. 1958), *cert. den.* 359 U.S. 934, 79 S.Ct. 649, 3 L.Ed.2d 636 (1959); Dawson, *Lawyers and Involuntary Clients: Attorney Fees from Funds*, 87 Harv.L.Rev. 1597 (1974).

The *Vincent* court discussed at length and ultimately applied the above-mentioned exception. In *Vincent*, the district court appointed lead counsel to conduct discovery and litigation for some sixty plaintiffs whose cases arising out of an air crash disaster were consolidated for trial. The trial court ordered all class members, including those represented by their own attorneys, to deposit five percent of any judgment or settlement with the clerk of the court to cover attorney fees. Ultimately, the court awarded the fund on deposit to lead counsel, holding that the work and efforts of lead counsel benefited all claimants.

In affirming, the Ninth Circuit held that the following elements of the common fund doctrine were relevant to the case: (1) "the original client's attorney's fees are not shifted to—or the attorney's personal claim for an extra fee is not lodged against—the adversary-losing party; rather, fees are shifted to third parties, people viewed as beneficiaries of the fund in some way"; (2) "no contractual relationship exists between the original attorney and the third parties"; (3) "the beneficiaries are expected to pay litigation costs in proportion to the benefits that the litigation produced for them"; (4) "as a general rule, if the third parties hire their own attorneys and appear in the litigation, the original claimant cannot shift to them his attorney's fees"; (5) "the third parties are not personally liable for the litigation costs. Any claim must be satisfied out of the fund"; (6) "there must exist some identifiable assets on which a court can impose a charge"; and (7) "the court

can legitimately exercise authority or control over the asset." 557 F.2d at 770. The *Vincent* court held that elements 1, 2, 3, and 5 were clearly satisfied. While a bit more difficult, the court also found that elements 6 and 7 were satisfied. As to the remaining element—the general rule that the original claimant cannot shift his attorney fees to other claimants that employ their own counsel to appear on their behalf in the matter—the court applied the exception to the general rule. In so doing, the court noted:

> The purpose of this exception is of course identical to the purpose of the broader common fund doctrine itself: avoidance of unjust enrichment, or as it has been referred to in this litigation, "coattailing."

*Id.* at 772. The *Vincent* court concluded that the district court's findings that lead counsel therein engaged in substantial work after the appointment that benefited all claimants justified the conclusion that the common fund doctrine permitted the awarding of lead counsel attorney fees from the entire fund.

As noted by the trial court in the case before us in its excellent memorandum opinion, the record reflects that the contributions and efforts of the class attorneys and the attorneys hired by the objecting class members are not only unequal, but class attorneys did the lion's share of the work and were directly responsible for the specific legal "events" that produced the substantial judgment.

Along with their petition, class attorneys filed an itemized statement of hours devoted to this litigation along with expenses incurred, and anticipated hours. The itemized statement reflects that they had expended 1,692.75 hours and anticipated another 150 hours at time of the hearing below. A member of the Burch, Porter & Johnson firm filed an affidavit regarding services rendered by that firm in this cause, noting that his firm had expended some 260 hours. A representative of Wilder and Johnson, the other firm opposing the class attorneys' petition, stated in his affidavit that his firm had expended some

281 hours on behalf of those class members represented by it.

The class attorneys filed an affidavit which reads in pertinent part:

We contacted Joel Porter and requested that he allow us to add his clients as plaintiffs in this action and that he come in as an attorney with us to represent the potential class. He refused to do so. Thereafter we moved for class certification and it was granted by the circuit court of Tipton County. The Court, by its order appointed Mr. Swayze and myself to represent the class as its attorneys.

Mr. Porter and Ed Johnson, attorney of Somerville, Tennessee thereafter entered their appearances for various individuals. They had had no input or assistance in the discovery that had occurred previously and had had no input whatsoever into this action. Thereafter, Mr. Swayze and I, as attorneys for the class prepared a motion for partial summary judgment as to the day one checks. The defendant filed its motion for summary judgment as to all issues. We, on behalf of the class filed rebuttal memorandum in opposition to their motion for summary judgment and in support of our motion for partial summary judgment. Mr. Porter and Mr. Johnson had no input whatsoever into the filing of the motion and filed no motions themselves. On the date of the hearing of the motions for summary judgment and partial summary judgment Mr. Porter and Mr. Johnson attended the hearing in Somerville, Tennessee. They had no input into those motions other than to join in the motions at the conclusion of all argument. The court rendered partial summary judgment for the day one checks which included two clients of Mr. Porter's totaling $207,566.04. It also included approximately seven clients of Mr. Johnson's with checks totaling $103,815.13. Neither Mr. Porter nor Mr. Johnson had any beneficial input whatsoever into the actions leading up to and including the granting of the partial summary judgment on the day one checks.

The defendant then moved for an interlocutory appeal which was granted by the trial court and denied by the appellate court, after briefs were submitted by Mr. Swayze and myself. We thereafter began to prepare for trial. The day prior to trial the defendant made an offer of $300,000.00 to settle all claims. This was refused although Mr. Porter suggested we strongly consider accepting the offer. Mr. Porter and Mr. Johnson made appearances on behalf of their clients at all three days of the trial but handled no witnesses during the trial. Other than the actual incourt trial time, Mr. Porter and Mr. Johnson had no input into the trial and offered no input into the preparation for the trial. At the conclusion of the trial the jury awarded the day two plaintiffs the face amount of their checks and the court awarded prejudgment interest. Judgment was entered in the amount of approximately $957,000.00. The only input of Mr. Porter and Mr. Johnson in arriving at the total verdict of $957,000.00 was their appearance at the three days of the trial.

The defendant made its motion for a new trial and/or JNOV and this was heard in Ripley, Tennessee. Mr. Porter and Mr. Johnson appeared at the hearing but offered no input prior to or during the hearing. The court denied the motion for new trial and/or JNOV and the defendant commenced its appeal to the Tennessee Intermediate Appellate Court.

The defendant appealed to the Tennessee Intermediate Court and Mr. Swayze and myself prepared the 55 page reply brief and addendum for all class members that was filed in that action. There was no input into the preparation of the brief by Mr. Porter or Mr. Johnson. They did not file briefs on behalf of their individual clients. The Tennessee Intermediate Court heard the appeal in Jackson, Tennessee on December 15, 1988. Mr. Porter and Mr. Johnson appeared at the argument but offered no input prior to or during the argument. The Tennessee Intermediate Court affirmed the entire judgment of the trial court including

the partial summary judgment and the jury verdict.

Thereafter, the defendant made its application for permission to appeal to the Tennessee Supreme Court. Mr. Swayze and myself prepared the class' reply objecting to the application with no input from Mr. Porter or Mr. Johnson. The Tennessee Supreme Court denied the application for appeal and the court's mandate was handed down to the circuit court.

Being completely familiar with every aspect of this case, having participated in every aspect of this case, Mr. Porter's total hours as far as any appearance or input in the case would consist of the preparation of the entry of appearance, the attendance at the motion for summary judgment, the attendance at the three days of the trial, the attendance at the motion for a new trial, and the attendance at the hearing on appeal in Jackson, Tennessee. This would total approximately forty-five (45) hours.

Mr. Johnson's sole participation in this action consisted in the preparation of an entry of appearance, attendance of the motion for summary judgments, attendance at the trial, attendance at the motion for a new trial and attendance at the hearing on appeal. His hours would total approximately forty-five (45) hours. At no time did either Mr. Porter or Mr. Johnson offer financial assistance of expenses or offer any beneficial input as to preparation for motions, for trial, or for appellate briefs.

The trial judge who presided over the class attorneys' fee hearing was the trial judge involved with this complex litigation from the beginning. In his memorandum opinion the judge stated he was satisfied that class attorneys had expended the amount of time set forth in their affidavit —1692.35 hours, as noted above. The trial judge also noted that the complex legal issues presented were first impression issues in this state, and that the briefs and various memoranda of law filed by class attorneys in connection with their clients' motion for partial summary judgment "were of extreme importance in convincing the Court that, as a matter of law, the Defendant, wrongfully dishonored the Day 1 checks."

The trial court also noted that "[t]he skill and legal expertise displayed by class attorneys and all other attorneys in this matter displayed a high degree of professionalism. The legal expertise was never more in evidence than at the hearing of Plaintiff's motion for summary judgment in the trial of this matter." The court went on to note that "[t]his ruling and the subsequent denial of interlocutory appeal, greatly simplified the issue to be resolved by the jury in this matter." The court further noted that the time devoted to this case by class attorneys precluded them from other extensive outside employment, and that the litigation presented great hazards and risks to them. In conclusion, the court noted in some detail that the benefits conferred upon the class as a whole were substantial, noting that the recovery amounted to one hundred percent of the face amount of the checks presented to the Bank on Days "1" and "2" that were wrongfully dishonored.

This Court is of the opinion that the trial court was correct in holding that the class attorneys may recover their attorney fees and expenses from all class members, including those represented by other counsel.

## II. FAILURE TO COMPLY WITH TENNESSEE SUPREME COURT RULE 19

■ Respondents next contend that class attorneys, licensed to practice law in Mississippi, failed to comply with Rule 19 of the Tennessee Supreme Court Rules. Rule 19 sets forth the terms and conditions under which attorneys licensed in other states but not licensed in Tennessee may practice in the courts of this state. It appears from the record that this issue was never raised at any time during the course of the underlying trial on the merits, nor was it raised at the attorneys' fees hearing below. An issue not raised nor considered in the trial court but raised for the first time on appeal will not be considered by this Court. *Indemnity Ins. Co. of North American v. Blackwell,* 653 S.W.2d 262 (Tenn.App.

1983); *Aleshire v. Aleshire*, 642 S.W.2d 729 (Tenn.App.1981).

## III. AN EVIDENTIARY BASIS FOR AWARD OF ATTORNEY FEES

█ By this appeal, respondents have not in any way raised as an issue the amount of attorney fees awarded to class attorneys. In this, their last issue, they contend that there was no evidence offered at the hearing to support an award of attorney fees of any type. We find this issue to be without merit.

The lawful allowance of attorney fees by a trial court is a matter of discretion with that court. The court may or may not hear expert proof relative to the value of the services rendered. It may or may not, depending upon the circumstances, feel it necessary to hear sworn testimony concerning attorney fees.

Without belaboring this issue, from a reading of the record, this Court is convinced that an appropriate hearing was conducted by the Court. The transcript of the proceedings below contains the following relevant dialogue:

THE COURT: I believe that all the cases that the Court has read with regard to this matter suggest that the Court should conduct an evidentiary hearing, some sort of hearing into this matter, to determine the reasonableness of the fees, and that is what the Court felt it was going to do this afternoon unless you gentlemen have some other thoughts regarding the matter that would be a contrary position.

. . . .

THE COURT: We will go ahead and we will conduct the evidentiary hearing.

MR. SWAYZE: Did you want us to put on witnesses and have testimony or would the affidavits that have been filed be sufficient? If you thought the affidavits which are all part of the record were sufficient we would just go forward and make a presentation on our petition to you.

THE COURT: All right, sir. And if any other—with regard to your petition, that will be fine, and then you other gentlemen can handle it any way you like, whether you want to put on any other proof or rely on the affidavit.

. . . .

THE COURT: As I understand it, gentlemen, with regard to the individuals that are represented by Mr. Porter and Mr. Johnson, that the Court is making no ruling with regard to their relationships and their arrangements with regard to their clients as far as any fees owed by their clients. We're only here on the applications of Mr. Swayze and Mr. Dale with regard to their fixing the attorney fees in this case. And I believe you gentlemen said y'all were going to rely upon your affidavit, correct?

MR. DALE: Yes, sir, and then presentation, arguments.

THE COURT: All right, sir.

Furthermore, class attorneys filed an itemization of hours devoted to the lawsuit along with affidavits of William H. Liston and Charles M. Merkel, Mississippi trial lawyers, and Ernest G. Kelly, Jr., a Tennessee trial lawyer, in support of their request for attorney fees and expenses. The affidavits of Liston, Merkel, and Kelly essentially state that all of them are familiar with and have reviewed the class action case along with the itemization of hours devoted to the matter by class attorneys and consider the fees and expenses requested by class attorneys to be fair and reasonable.

We note again that the trial judge who awarded attorney fees to class attorneys is the same judge that tried this case from its inception. He was obviously quite familiar with the case. A reading of his memorandum opinion clearly indicates this fact. As a general rule, "services of an attorney, when rendered in litigation before the same court that is passing on the value of such services may, of themselves, constitute evidence from which the court alone … may reach a conclusion" as to the value of such services. 7 Am.Jur.2d *Attorneys at Law* § 312 (1980).

For the foregoing reasons, the judgment of the trial court is affirmed in all respects.

Costs in this cause on appeal are taxed to Respondents, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.