IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 3, 2000 Session

## ANITA MARTINO, ET AL. v. ROBERT L. DYER, ET AL.

**Appeal from the Circuit Court for Sumner County**
**No. 17632     William M. Dender, Judge**

---

**No. M1999-02397-COA-R3-CV - Filed November 22, 2000**

---

The trial court granted the motion of an attorney seeking collection of a *pro rata* share of his fee from a hospital lien against his client's settlement. The effect of the trial court's order is to require the hospital to pay fees to an attorney it did not hire. We reverse the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

H. E. Miller, Jr., Gallatin, Tennessee, for the appellants, Robert L. Dyer and Sumner Regional Medical Center

Catherine S. Hughes and Joseph M. Dalton, Jr., Nashville, Tennessee, for the appellees, Anita Martino and Joseph M. Dalton, Jr.

**OPINION**

Anita Martino was injured in an automobile accident and received treatment for these injuries at Sumner Regional Medical Center (SRMC). Ms. Martino filed suit against Robert L. Dyer, the driver of the other vehicle involved in the collision, and informed SRMC that she was seeking damages from the other driver. Rather than filing a lawsuit against Ms. Martino to collect on its bill, the hospital held her outstanding accounts for some time. After she notified the hospital she was proceeding against the other driver, SRMC filed an amended Notice of Hospital Lien for the amount of $8,786.00 pursuant to Tenn. Code Ann. § 29-22-101. Ms. Martino and Mr. Dyer reached a settlement agreement for $42,500. Mr. Dyer's attorney delivered a check for this amount to Mr. Dalton, attorney for Ms. Martino. Mr. Dalton retained the $8,786.00 claimed by SRMC, despite inquiries from the hospital as to its status, and then filed a motion for attorney fees "for the collection of monies on behalf of Sumner Regional Medical Center in the amount of $8,786.00" requesting

one-third of the amount of the hospital lien. The trial court granted this motion, ordering Mr. Dalton to pay $5,887.00 to SRMC. The trial court found that Mr. Dalton had already deducted his fee from the net settlement and ordered that the remaining $2,899.00 of the total money attached by the hospital lien be given to Ms. Martino as compensation. The trial court stated:

> [T]he amount due Sumner Regional Medical Center from . . . the settlement proceeds held in escrow is the amount of the lien filed less the amount of attorney fee charged Ms. Martino on the amount claimed by the lien. The attorney fee charged on the amount claimed by the lien should be the same percentage as was charged on the entire settlement. The amount of the attorney fee charged Ms. Martino on the amount of the lien of Sumner Regional Medical Center shall be refunded to Ms. Martino out of the proceeds of the settlement funds held in escrow by Attorney Dalton.

In essence, the trial court awarded Ms. Martino's counsel 33% of the hospital's recovery to be deducted from the hospital's payment.

## I.

We begin our analysis with the statute creating hospital liens:

> a) Every person, firm, association, corporation, institution, or any governmental unit, including the state of Tennessee, any county or municipalities operating and maintaining a hospital in this state, shall have a lien for all reasonable and necessary charges for hospital care, treatment and maintenance of ill or injured persons upon any and all causes of action, suits, claims, counterclaims or demands accruing to the person to whom such care, treatment or maintenance was furnished, or accruing to the legal representatives of such person in the case of his or her death, on account of illness or injuries giving rise to such causes of action or claims and which necessitated such hospital care, treatment and maintenance.

> b) The hospital lien, however, shall not apply to any amount in excess of one-third (1/3) of the damages obtained or recovered by such person by judgment, settlement or compromise rendered or entered into by such person or his or her legal representative by virtue of the cause of action accruing thereto.

> c) The lien herein created shall be subject and subordinate to any attorney's lien whether by contract, suit or judgment upon such claim or cause of action and shall not be applicable to accidents or injuries within the purview of the Tennessee Workers' Compensation Law, compiled in chapters 9-12 of title 50. Any such lien arising out of a motor vehicle accident shall not take priority over a mechanic's lien or prior recorded lien upon a motor vehicle involved in said accident.

Tenn. Code Ann. § 29-22-101 (2000).

The Attorney General of Tennessee has opined that the legislative purpose of this statute is to protect hospitals.

> In enacting this legislation [hospital lien statute], the legislature indicated that the purpose of this Act is to create liens for hospitals to ensure that hospital bills are paid. (Senate Debate on S.B. 824 (February 11, 1970) (Tape No. S-056). The legislature recognized that hospitals were losing funds from providing care to individuals who later collected a settlement or judgment for their injuries but failed to pay their hospital bills. Id. The legislature noted that this Act would help keep hospital costs down by setting up an orderly method for the establishment of liens on such settlements or judgments. (House Debate on H.B. 1056 (S.B.824) (February 20, 1970) (Tape No. H-126).

Op. Tenn. Att'y Gen. 94-067 (May 13, 1994).

> Courts in other states have found a similar purpose in similar hospital lien statutes:

> The purpose of a hospital lien statute is to provide hospitals an additional method of securing payment for medical services, thus encouraging the prompt and adequate treatment of accident victims.

*Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 309 (Tex. 1985).

Similarly, the Indiana Court of Appeals has found that Indiana's hospital lien statute has as its underlying purpose "to [ensure] that hospitals are compensated for their services." *Community Hosp. v. Carlisle*, 648 N.E.2d 363, 365 (Ind. Ct. App. 1995).

> By allowing health care providers direct interests in funds collected by personal injury patients, the statute furthers the important policy of reducing the amount of litigation that would otherwise be necessary to secure repayment of the health care debts.

*Id.*

We interpret Tenn. Code Ann. § 29-22-101 as providing hospitals with a mechanism to ensure that those people who recover damages for injuries pay their hospital bills out of those recoveries. The hospital, of course, is not obligated to file a lien and is not precluded from other remedies available to it to collect from any patient who has not paid his or her bill.

II.

The trial court herein read subsection (c) of Tenn. Code Ann. § 29-22-101 as subordinating the hospital's lien to Mr. Dalton's fees. We disagree and interpret the priority-setting provision to apply only where the recovery is insufficient to meet both the attorney's lien and the hospital's lien.

We agree with the reasoning of the Court of Appeals of Indiana as set out in *Community Hospital v. Carlisle*, a case involving the same issue presented in the case before us and based on Indiana's hospital lien statute. That court stated:

> Where settlement, compromise or other proceeds are sufficient to pay all interested parties, rules regarding order of payment serve no useful function. A problem arises only where funds are insufficient to meet all claims.

*Carlisle*, 648 N.E. 2d at 365.

The Indiana court recognized the various interests which that state's statute attempted to accommodate and noted that by expressly allowing attorneys to collect their fees before satisfaction of other liens, the statute helped ensure that personal injury claims are pursued on behalf of injured persons who cannot initially afford attorney fees. *See id.* Both the Tennessee statute and the Indiana statute, by different methods, ensure that the injured person's recovery cannot be depleted by the hospital's lien. Tenn. Code Ann. § 29-22-101(b) limits the hospital lien to one-third of the damages recovered.

A lien is a legal claim on property for the payment of a debt or obligation. *See Keep Fresh Filters, Inc. v. Reguli*, 888 S.W.2d 437, 443 (Tenn. Ct. App. 1994). Ms. Martino owed the hospital for the services provided, and she recovered damages which included her medical costs. She also owed her attorney for his services on her behalf. It is undisputed that the amount Ms. Martino recovered was sufficient to pay both the hospital and her lawyer.[1] Therefore, the lawyer and the hospital were not competing for the same money and the issue of priority of their rights is simply not relevant.

Other provisions of the Tennessee hospital lien statutes contravene any implication that the hospital's recovery can be reduced by anything other than its statutory one-third limit. The statutes provide that any acceptance of a release of a claim for damages and any settlement of such claim, in the absence of a release of the lien by the hospital lienholder, constitute an impairment of the hospital's lien. Tenn. Code Ann. § 29-22-104(b)(1). "[T]he lienholder shall be entitled to an action

---

[1] In his brief, Mr. Dalton attempts to argue that the $8,786.00 is, actually, more than one-third of Ms. Martino's net recovery. We find no basis for applying Tenn. Code Ann. § 29-22-101(b)'s limitation of one-third of the settlement amount to anything other than the settlement amount. *See Spivey v. Anderson*, No. 02A01-9704-CV-00075, 1997 WL 563190 at *5 (Tenn. Ct. App. Sept. 9, 1997) (no Tenn. R. App. P. 11 application filed). Further, although Mr. Dalton's argument appears to refer to the effect of litigation expenses, there is nothing in the record before us establishing such expenses.

-4-

at law for damages on account of such impairment." *Id.*; *see also University of Tennessee v. Prudential Ins. Co.*, No. 03A01-9611-CV-00345, 1997 WL 119582 at *3 (Tenn. Ct. App. March 18, 1997, order on Rehearing July 1, 1997) (perm. app. denied Dec. 22, 1997) (hospital lien applied to contractual obligation of insurer who paid its insured for hospital costs, and hospital was entitled to recover full amount of the lien as damages in suit against insurer for impairment of its lien).

We conclude that the statute provides no basis for the reduction by the trial court of the amount due to the hospital.

## III.

Mr. Dalton asserts alternative or additional bases for the trial court's decision. Before we examine those bases, however, it is important to identify the specific effect of the trial court's ruling. While limiting the total amount of fees payable to Mr. Dalton, the court ordered that the hospital's lien amount be reduced by 33% and that Ms. Martino's attorney fees be reduced by that much. In essence, the trial court required the hospital to pay Ms. Martino's lawyer as if he had also been the hospital's lawyer. Mr. Dalton describes the order as requiring the hospital to pay its share of attorney fees necessary to recover the settlement on a *pro rata* basis. He asserts that the order appropriately recognizes the benefit the hospital received due to his efforts.

The general rule in Tennessee, however, is to the contrary.

> There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others.

*Travelers Ins. Co. v. Williams*, 541 S.W.2d 587, 589 (Tenn. 1976).

While acknowledging the general rule, Mr. Dalton asserts that the situation before us falls within a recognized exception. Mr. Dalton's motion for attorney fees was originally based upon a theory of *quantum meruit.* In a supplemental memorandum, he also asserted alternative theories of subrogation and the common fund doctrine. On appeal, Mr. Dalton argues the common fund doctrine and unjust enrichment. Each of these theories must be examined in the context of the particular facts of this case and with recognition that the beginning point is the general rule that a lawyer must look to his or her client, not others incidentally benefitted by the attorney's efforts, for payment of fees.

"A *quantum meruit* action is an equitable substitute for a contract claim pursuant to which a party may recover the reasonable value of goods and services provided to another" under certain circumstances. *Swafford v. Harris*, 967 S.W.2d 319, 324 (Tenn. 1998). Among the circumstances required to be shown are (1) that the parties to the transaction should have reasonably understood

that the person providing the goods or services expected to be compensated and (2) that it would be unjust to retain the goods or services without payment. *See id.*

The facts in this case demonstrate that the hospital did not hire Mr. Dalton to act in its behalf. Mr. Dalton was hired by Ms. Martino to pursue her claim against the driver who caused her injuries. The record herein includes an undisputed affidavit from an employee of the hospital's accounting department. It documents the hospital's efforts to get Ms. Martino to pay her bill. After telling Ms. Martino that it could not hold the accounts indefinitely, the hospital received a letter from Mr. Dalton asking for "some understanding on your part in your efforts to satisfy any outstanding medical bills." The hospital filed its lien, but continued to seek information regarding any legal action Ms. Martino might take, including communications with Mr. Dalton's office. The affidavit makes it clear that the hospital's efforts and interest were solely related to its collecting from Ms. Martino the $8,786.00 it had billed her. The affidavit concludes:

> SRMC did not employ Attorney Dalton to represent its interest in regard to the Hospital Lien which applies to the above styled lawsuit. Attorney Dalton has not provided a valuable service to SRMC. To encourage SRMC not to pursue collection actions against his client, Plaintiff Martino, Attorney Dalton suggested to SRMC that it file a Hospital Lien, which would protect its interest in recovering the amount of its hospital charges.

Although the affidavit's conclusions are not undisputed statements of fact and Mr. Dalton disagrees with any legal conclusion to be drawn from the facts, Mr. Dalton has furnished no evidence that he had any agreement with the hospital to represent it. The hospital was Ms. Martino's creditor and had available to it various remedies to collect the debt she owed, regardless of her ability to collect damages for her injuries from another party. We agree with the Supreme Court of Montana, which stated:

> The attorneys here simply performed the services they were obligated to perform under their employment contract with their client, the accident victim. The client received the benefit of her attorneys' services in the form of accident settlement proceeds from which she could pay the hospital bill she owed to the hospital and discharge its lien. The fact that an incidental benefit was also received by the hospital from her attorneys' services in the form of settlement proceeds from which its bill could be paid does not, in itself, create an implied contract by the hospital to pay her attorneys for their services.

*Sisters of Charity of Providence of Montana v. Nichols*, 483 P.2d 279, 282-83 (Mont. 1971).

In addition, Mr. Dalton has not met another requirement for a successful *quantum meruit* claim: a showing that it would be unjust for one party to retain the goods or services provided without payment. On appeal, Mr. Dalton has also argued, independently of a *quantum meruit* claim, that the hospital would be unjustly enriched if it were not required to pay a *pro rata* share of the

attorney fees involved in acquiring the settlement for Ms. Martino. We disagree that the hospital would be unjustly enriched by receiving full payment for the medical services it provided. There is no dispute that the services were provided and no dispute as to their reasonableness. The hospital was entitled to full payment of its bill from Ms. Martino, and we cannot see how receiving that payment could be considered unjust enrichment. *See Broadlawns Polk County Hosp. v. Estate of Major*, 271 N.W.2d 714, 716 (Iowa 1978) (in response to a similar unjust enrichment argument, the court noted that the patient, rather than the hospital, would be unjustly enriched if the hospital were required to pay a portion of the patient's attorney fees).

IV.

Mr. Dalton's alternative argument regarding subrogation must also fail. Subrogation is the substitution of another person in the place of a creditor, so that the person in whose favor it is exercised succeeds to the rights of the creditor in relation to the debt. *See York v. Sevier County Ambulance Auth.*, 8 S.W.3d 616, 618 (Tenn. 1999); *Blankenship v. Estate of Bain*, 5 S.W.3d 647, 650 (Tenn. 1999). A right of subrogation may arise by contract, by application of equitable principles, or by application of a statute. *See Blankenship*, 5 S.W.2d at 650. However, subrogation is only available where the subrogee pays a debt for which the other party is primarily liable. *See In re Yeargin*, 116 B.R. 621, 622 (Bankr. M.D. Tenn. 1990). In the case before us, the hospital has not paid a debt for Ms. Martino, and Mr. Dyer, the defendant, is not Ms. Martino's creditor. None of the required elements to establish subrogation is present, and the hospital cannot be substituted for Ms. Martino in pursuing a claim for damages against Mr. Dyer.

An Indiana Court of Appeals has recognized the difference between a subrogee and a hospital lienholder by holding that Indiana's hospital lien statute, which is comparable to that of Tennessee, does not subrogate the hospital for its patient. The court concluded that:

> [W]e have stated that subrogation is a "a legal fiction through which a person, who not as a volunteer or in his own wrong, and in the absence of outstanding and superior equities, pays the debts of another, is substituted to all rights and remedies of the other." In this case [the hospital] did not "pay" the debts of [the patient], and the hospital lien statute does not give [the hospital] a right to substitute itself in place of [the patient] to collect a claim belonging to . . . its patient. The hospital merely has an interest in the proceeds of a claim or settlement that [the patient] is to receive.

*National Ins. Ass'n v. Parkview Mem'l Hosp.*, 590 N.E.2d 1141, 1145 (Ind. Ct. App. 1992) (citations omitted).

In a case involving whether the attorney for an injured party was entitled to fees from the insurer subrogee, our Supreme Court stated:

> Upon payment by the insurer of a loss, it becomes the real party in interest with respect to the subrogation claim and has the right to bring suit in the name of the

insured or in its own name. The insurer may intervene in an action brought by the insured against a wrongdoer and assert its subrogation claim therein but, it cannot bring suit against the wrongdoer after judgment has been rendered in the insured's action. In short, the subrogation claim is the property of the insurer to deal with as it pleases so long as the rights of others, e.g., the insured or the wrongdoer, are not prejudiced.

It follows that whether or not an attorney is entitled to collect from the insurer a fee with respect to a subrogation claim depends upon whether an express or implied contract or a quasi contractual relation exists between them.

*Travelers Ins. Co*, 541 S.W.2d at 590 (citations omitted).

There is no evidence in the record before us of a contract, express or implied, between the hospital and Mr. Dalton. Because Mr. Dalton represented Ms. Martino, a debtor of the hospital which was prepared to take necessary action against her to collect the debt owed, it would be inappropriate to assume that Mr. Dalton also undertook to represent the hospital's interests. In any event, the hospital was not a subrogee to Ms. Martino's action against Mr. Dyer.

V.

Like *quantum meruit*, the "common fund doctrine" is an equitable concept designed to prevent unjust enrichment. Tennessee courts have recognized the common fund doctrine in those circumstances where more than one party and counsel have contributed to securing a single judgment that inures to the benefit of all the parties. In such situations, the common fund doctrine may be applied to determine the allocation of fees and expenses. *See PST Vans, Inc. v. Reed*, Nos. 03A01-9901-CV-00113 and E1999 01963 COA R3 CV, 1999 WL 1273517 at *3 (Tenn. Ct. App. Dec. 28, 1999) (no Tenn. R. App. P. 11 application filed). Essentially, the common fund doctrine is an exception to the general rule that attorneys may look only to the clients with whom they contract for compensation. It provides that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Hobson v. First State Bank,* 801 S.W.2d 807, 809 (Tenn. Ct. App. 1990) (quoting *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977)).

Our Supreme Court has recognized the doctrine:

There are, of course, many situations in which the work of an attorney proves useful to persons other than his own client. The normal rule in such cases is that he must look only to his client, with whom he has contracted, for his compensation, notwithstanding the acceptance of benefits by others. But, an exception to this rule is made whenever one person, having assumed the risks and expense of litigation, has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common. In that event, the expenses of the action are borne by each participant according to his interest. The fairest and most

-8-

efficient means of distributing these costs is thought to be to make them a charge upon the fund itself. This device, known as the 'fund doctrine,' was invented by courts of equity to prevent passive beneficiaries of the fund from being unjustly enriched. It is, therefore, never applied against persons who have employed counsel on their own account to represent their interests. Thus, the right to employ counsel of one's own choosing is preserved.

*Travelers Ins. Co.*, 541 S.W.2d at 589-90 (citations omitted).

In *Travelers*, the court implied, without specifically holding, that the common fund doctrine may apply to actions involving an injured party and the insurer subrogee, on the basis that the subrogee becomes a real party in interest in an action against the party causing the injury. *Hobson v. First State Bank* involved payment of attorney fees in a class action lawsuit, and this court determined that the attorneys for the class were entitled to recover their fees from the common fund or, in effect, from all class members, including those represented by other counsel. *See Hobson*, 801 S.W.2d at 812. Damages recovered in a class action on behalf of a class of plaintiffs unquestionably constitute a "common fund." Tennessee courts have also applied the common fund doctrine to damages in a wrongful death action where more than one party has a statutorily-created claim. *See Wheeler v. Burley*, No. 01A01-9701-CV-00006, 1997 WL 528801 at *4-*5 (Tenn. Ct. App. Aug. 27, 1997) (perm. app. denied Apr. 13, 1998); *In re Estate of Stout*, No. 01A01-9308-CH-00360, 1994 WL 287765 at *4 (Tenn. Ct. App. June 29, 1994) (no Tenn. R. App. P. 11 application filed); *PST Vans, Inc. v. Reed*, 1999 WL 1273517 at *5; *Spivey v. Anderson*, No. 02A01-9704-CV-00075, 1997 WL 563199 at * 5 (Tenn. Ct. App. Sept. 9, 1997) (no Tenn. R. App. P. 11 application filed).

We are unaware of any other situation in which Tennessee courts have applied the common fund doctrine. It is axiomatic that the "common fund doctrine" can be applied only where a "common fund" exists. *See Tennessee Small Schools Sys. v. McWherter*, No. 01A01-9211-CH-00447, 1993 WL 295006 at *6 (Tenn. Ct. App. Aug. 4, 1993) (perm. app. denied Mar. 7, 1994) (the "common fund" doctrine is inapplicable where there is no judicially created common fund). There is no such fund in this situation because the hospital has no claim against a third party who may have caused the injuries treated by the hospital. Its claim is against its debtor.

The hospital lien statutes make it clear that the filing of a lien does not give a hospital a cause of action against an alleged tortfeasor:

The provisions of this chapter shall not be construed as giving any hospital an independent right of action to determine liability for injuries sustained by any person covered herein nor shall any settlement or compromise of a claim entered into on behalf of such person require the approval of the hospital.

Tenn. Code Ann. § 29-22-107(a).

The common fund doctrine is not applicable to this case, primarily because SRMC and Ms. Martino do not have equal rights to share in the settlement funds. SRMC is a creditor who may collect from Ms. Martino regardless of the source of the funds she uses to pay her hospital bill. The settlement itself belongs to Ms. Martino. The hospital has no cause of action against Mr. Dyer. The proceeds of the settlement are not a "common fund" because the hospital and Ms. Martino are not entitled to share in the settlement in common.

V.

Accordingly, we reverse the order granting Mr. Dalton's request for a *pro rata* share of attorney fees from Sumner Regional Medical Center's hospital lien and remand the case to the trial court for such further proceedings as may be required.

_____
PATRICIA J. COTTRELL, JUDGE