IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
January 9, 2002 Session

## TAMMY L.M. KLINE, FOR HERSELF AND FOR THE USE AND BENEFIT OF LORI MICHELLE KLINE, KRISTY LAINE KLINE, AND DIANA MARIE KLINE v. DANIEL P. EYRICH, ET AL.

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Knox County**
**Nos. 3-284-99; 1-320-99    Hon. Wheeler R. Rosenbalm, Judge**

---

**No. E2000-01890-SC-R11-CV - Filed March 1, 2002**

---

The primary issue in this case is whether a trial court may use the common fund doctrine in a wrongful death action to spread attorneys' fees equitably among the surviving beneficiaries of the action. The trial court consolidated two wrongful death actions, which were brought by the surviving spouse and children of the decedent, and it gave the surviving spouse control of the consolidated action. After the suit was settled, the trial court awarded the surviving spouse's attorney one-third of the settlement proceeds as a fee. On appeal, the children argued that the trial court improperly awarded fees to the surviving spouse's attorney from their share of the settlement because they possessed no contract with that attorney. A majority of the Court of Appeals held that although the award of fees could be proper under the common fund doctrine, the case should be remanded to resolve factual ambiguities in the record. We granted permission to appeal and hold that a trial court has the discretion to apply the common fund doctrine to the proceeds of a wrongful death action, thereby obliging the beneficiaries of that action to pay a reasonable fee to the attorney procuring the judgment or settlement. We also hold that the record contains no evidence showing that the trial court abused its discretion in awarding fees to the surviving spouse's attorney. The judgment of the Court of Appeals is affirmed in part and reversed in part.

### Tenn. R. App. P. 11 Application for Permission to Appeal; Judgment of the Court of Appeals Affirmed in Part, Reversed in Part

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and JANICE M. HOLDER, JJ., joined.

Jerry A. Farmer and Bradley A. Farmer, Knoxville, Tennessee, for the appellant, Tammy L.M. Kline.

Thomas S. Scott and Christopher T. Cain, Knoxville, Tennessee, and Paul G. Beers, Roanoke, Virginia, for the appellees, Lori Michelle Kline, Kristy Laine Kline, and Diana Marie Kline, by their next friend, mother, and natural guardian, Marcia Kline Newcomb.

## OPINION

## FACTUAL BACKGROUND

On April 10, 1999, Richard Kline was killed when a car driven by Daniel Eyrich struck his motorcycle. He was survived by his wife, appellant Tammy L. M. Kline, and by his three children of a former marriage, appellees Lori Michelle Kline, Kristy Laine Kline, and Diana Marie Kline. Shortly after this accident, the children contacted the appellant about filing a wrongful death action against Mr. Eyrich, but they received no response from her. Consequently, on April 30, 1999, the children sued Mr. Eyrich in the Knox County Circuit Court for the wrongful death of their father. Less than three weeks later, however, the appellant filed a separate wrongful death action in the same court, claiming preemptive rights to sue as the surviving spouse and demanding damages for herself and for the three children.[1]

The trial court initially consolidated the two cases, allowing each party to proceed independently with pre-trial discovery,[2] but on April 19, 2000, it issued an order clarifying the roles of the parties. In this order, the court held that the appellant was the "proper party . . . to prosecute the singular cause of action for the wrongful death of Richard E. Kline in all respects," and that she "was empowered to enter into a bona fide settlement of the claim," which would be binding on the children. The trial court also held that the appellant's attorney had the right to conduct all aspects of the proof at trial, but it reserved the right to permit the children to establish their own damages for loss of consortium.

Within two weeks of the court's order, the appellant's attorney negotiated a settlement with Mr. Eyrich for $1,100,000.00. On May 8, 2000, the children filed a motion to have their statutory share of the settlement paid directly to them.[3] In response to this motion, the appellant's attorney asserted that he was entitled to receive $244,444.44 as a fee from the children's portion of the settlement. After a hearing on this issue on May 23, 2000, the trial court concluded that the

---

[1] Both the appellant and the children agreed to pay their respective attorneys a contingency fee of one-third of any recovery obtained on their behalf.

[2] Though not relevant to the issues in this appeal, the record reveals that substantial animosity exists between the parties and that the appellant apparently refused all requests by the children for cooperation in the litigation. For this reason, the parties proceeded with discovery more or less independently.

[3] Proceeds of a wrongful death action are distributed according to the laws of intestate succession. See Foster v. Jeffers, 813 S.W.2d 449, 452 (Tenn. Ct. App. 1991) ("[I]t is the law in Tennessee that the proceeds from a wrongful death action become personal property of the deceased and the court will look to the statutes on distribution of personalty as a guide [to distributing those proceeds]." (citing Anderson v. Anderson, 211 Tenn. 566, 366 S.W.2d 755 (1963)).

appellant's attorney was entitled to a one-third contingency fee from the entire settlement before any distribution of the proceeds to the parties. The court also stated that the children's attorneys did not help to bring about the settlement and that their participation was unnecessary to effect the resolution of the case. A final order distributing the settlement funds was entered on June 23, 2000.

The children appealed to the Court of Appeals, arguing that the trial court improperly awarded fees to the appellant's attorney from their share of the settlement. A majority of the intermediate court held that the settlement funds formed a common fund from which the appellant's attorney could seek his fees. However, the majority also found that the record did not support the trial court's finding that the children's attorneys failed to contribute to procuring the settlement. Instead, the court concluded that if these attorneys did contribute to obtaining the settlement with Mr. Eyrich, then they would also be entitled to take their fees from the common fund. Consequently, the court remanded the case for an evidentiary hearing on the issues of whether the children's attorneys contributed to procuring the settlement and as to "what the reasonable fee would be under all the circumstances of this case."

Dissenting from the court's decision to remand the case for an evidentiary hearing, Judge Susano wrote that the record fully supported the trial court's findings. He concluded that because the statutes precluded the children from participating in the appellant's wrongful death action, their attorneys had no right

> to prepare this case for trial with the expectation that their efforts would or could position their counsel to share in the contingent fee due for pursuing this claim. That fee belongs to counsel representing the individual who had the right to pursue and the responsibility for pursuing the claim; in other words, counsel for the widow.

Judge Susano also concluded that because no party argued that a one-third contingency fee contract was unreasonable under these circumstances, the appellant's attorney was entitled to recover his one-third contingency fee from the proceeds of the entire settlement.

We then granted the appellant's application for permission to appeal on the issue of whether the Court of Appeals erred in applying the common fund doctrine to the settlement proceeds of a wrongful death action. For the reasons given herein, we hold that the intermediate court was correct to apply the common fund doctrine to the settlement proceeds in this case. However, we also hold that because the children are deemed, as a matter of law, to be passive beneficiaries of the action, the court should not have remanded this case to determine whether the children's attorneys participated in procuring the settlement. Finally, we conclude that the record contains no evidence showing that the trial court abused its discretion in awarding the appellant's attorney a one-third contingency fee from the common fund. Accordingly, the judgment of the Court of Appeals is affirmed in part and reversed in part.

## STANDARD OF APPELLATE REVIEW

Any issue as to whether the common fund doctrine applies to spread an attorney's fee among various parties is a question of law. See Kindred v. City of Omaha Employees' Ret. Sys., 564 N.W.2d 592, 595 (Neb. 1997). Accordingly, our standard of review on this issue is *de novo*, according no presumption of correctness to the trial court's conclusions of law. See, e.g., Doyle v. Frost, 49 S.W.3d 853, 856 (Tenn. 2001). However, upon finding that the common fund doctrine is applicable, "[t]he allowance of attorney's fees is [then] largely in the discretion of the trial court." Cf. Aaron v. Aaron, 909 S.W.2d 408, 411 (Tenn. 1995). Consequently, we will uphold a trial court's award of fees unless it has abused its discretion, see Fell v. Rambo, 36 S.W.3d 837, 853 (Tenn. Ct. App. 2000), meaning that it either applied an incorrect legal standard or reached a clearly unreasonable decision, thereby causing an injustice to the aggrieved party, see Clinard v. Blackwood, 46 S.W.3d 177, 182 (Tenn. 2001) (citing State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)).

## THE COMMON FUND DOCTRINE

Before discussing the precise issues presented in this case, it may be helpful to first review the relevant aspects of the common fund doctrine. In the absence of a statute or contract providing for the payment of attorneys' fees, attorneys in Tennessee must generally look only to their own client for their fees. See Remco Equip. Sales, Inc. v. Manz, 952 S.W.2d 437, 439 (Tenn. Ct. App. 1997). This principle usually follows even when the work of the attorney proves useful to persons other than the client. See Boston, Bates & Holt v. Tennessee Farmers Mut. Ins. Co., 857 S.W.2d 32, 34-35 (Tenn. 1993). However, an exception to this rule arises when the attorney "has succeeded in securing, augmenting, or preserving property or a fund of money in which other people are entitled to share in common." Travelers Ins. Co. v. Williams, 541 S.W.2d 587, 589-90 (Tenn. 1976). In such a case, the attorney may oblige the beneficiaries of the fund or property to contribute to his or her fee by assessing that fee directly against the fund or property itself. See id.

Known as the "common fund doctrine," this doctrine is designed to spread attorneys' fees among various beneficiaries to a fund, and it is supported by two primary rationales. First, the doctrine prevents the beneficiaries of legal services from being unjustly enriched by requiring them to pay for those services according to the benefit received. See Pennington v. Divney, 182 Tenn. 207, 211-12, 185 S.W.2d 514, 516 (1945). Second, the doctrine serves to spread the costs of litigation proportionally among all of the beneficiaries so that the plaintiff does not bear the entire burden alone. See Hobson v. First State Bank, 801 S.W.2d 807, 809 (Tenn. Ct. App. 1990) (citation omitted). Indeed, in furtherance of this latter rationale, the doctrine may be applied irrespective of whether the other beneficiaries to the common fund actually receive the benefits of the common fund. See id.

Because of the rationales supporting the doctrine, courts typically apply it only against the fund's "passive" beneficiaries, who are typically those beneficiaries not employing separate counsel

-4-

to represent their own interests. See Travelers Ins. Co., 541 S.W.2d at 590.[4] However, while the hiring of separate counsel can avoid application of the common fund doctrine under most circumstances, a beneficiary who hires separate counsel cannot escape application of the doctrine completely. Plainly stated, unless the separate counsel meaningfully participates in acquiring, preserving, or increasing the common fund, see Montcastle v. Baird, 723 S.W.2d 119, 123 (Tenn. Ct. App. 1986), the beneficiary may be obliged to pay fees to the original or lead counsel in addition to those fees payable to the separate counsel. These circumstances can arise when (1) the original or lead counsel was responsible for the "lion's share" of work in acquiring, preserving, or increasing the common fund, Hobson, 801 S.W.2d at 809; (2) the work of separate counsel inured only to the benefit of a single beneficiary, and not to the fund itself, Gilpin v. Burrage, 188 Tenn. 80, 90, 216 S.W.2d 732, 737 (1948); Merchants & Planters Bank v. Myers, 644 S.W.2d 683, 688 (Tenn. Ct. App. 1982); or (3) the separate counsel was hired expressly to advocate interests contrary to those of the common fund.[5]

With this general background in mind, therefore, we turn to the two issues presented in this case: (1) whether the common fund doctrine may be applied to the proceeds of a wrongful death action generally; and (2) whether the children in this case, who hired separate counsel to protect their interests, are nevertheless required to pay an equitable share of the appellant's attorneys' fees.[6] Importantly, if the common fund doctrine does not apply here, or if the children are held not to be passive beneficiaries to the action, then the appellant's attorney must seek compensation from his client alone, and he may not recover any additional fees from the children's share of the settlement.

### GENERAL APPLICATION OF THE COMMON FUND DOCTRINE TO THE PROCEEDS OF A WRONGFUL DEATH ACTION

No case from this Court has expressly recognized that the common fund doctrine may be applied to the proceeds of a wrongful death action, although the Court of Appeals has done so in at

---

[4] See also Ensley v. Ensley, 105 Tenn. 107, 136, 58 S.W. 288, 294 (1900) ("[I]nasmuch as the parties other than complainants have also to employ counsel to represent their interests, and they incur fees, it would not be equitable or proper to pay counsel fees representing one interest, and not to pay others as vitally, if not so extensively, interested."); see also Travelers Ins. Co., 541 S.W.2d at 590 (stating that the common fund doctrine is not "applied against persons who have employed counsel on their own account to represent their interests").

[5] See In re McCrary, No. 87-128-II (Tenn. Ct. App. filed at Knoxville, June 9, 1987). In this case, an heir to an estate hired counsel to keep certain property out the estate so that he could use the property for his own personal benefit. The Court of Appeals held that "a beneficiary who retains counsel to thwart efforts to marshal assets of the estate is certainly in no better position than a passive beneficiary and should have to bear his or her share of the attorney's fees [under the common fund doctrine] which were incurred to augment or preserve the estate."

[6] The children do not argue in this Court that their own attorneys are entitled to compensation from the common fund created by the settlement. Instead, they maintain only that they should not be required to pay for the legal services of the appellant's attorney, with whom they had no contract.

least three unreported cases.[7]  However, the common law does not prevent the doctrine from being applied in such an action, as the doctrine can be "applie[d] generally to all funds [that are] created, increased[,] or preserved by a party in which others have an ownership interest."  Scholtens v. Schneider, 671 N.E.2d 657, 663 (Ill. 1996); see also Edwards v. Alaska Pulp Corp., 920 P.2d 751, 755 (Alaska 1996) ("The common fund doctrine is implicated any time one litigant's success releases well-defined benefits for a limited and identifiable group.").  In fact, the only restriction against applying the doctrine in Tennessee is that attorneys' fees may not be taken from a portion of the fund that is subject to a lien or other interest superior to that of the common beneficiaries.  See Bird v. Collette, 26 Tenn. App. 181, 185, 168 S.W.2d 797, 799 (1942).

Nevertheless, even when a common fund has been created, application of the common fund doctrine to spread attorneys' fees among the fund's beneficiaries may not always be advisable.  The United States Supreme Court has recognized that application of the doctrine is warranted only when the number of beneficiaries is relatively small and their identities are easily discovered; when the benefits accruing to each beneficiary can be determined with some accuracy; and when the attorneys' fees can "be shifted with some exactitude to those benefiting."  See Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980); Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 265 n.39 (1975).  Several other states have also used these considerations to decide whether application of the common fund doctrine would be proper in any given case.[8]

We conclude that application of the common fund doctrine in the wrongful death context will rarely be inappropriate.  Undeniably, a party's successful efforts in bringing a wrongful death suit result in creating a fund in which multiple parties may claim an ownership interest.  These beneficiaries stand on equal footing as claimants against the fund, with no interest in the proceeds being subordinate or superior to another.[9]  Moreover, the beneficiaries of wrongful death proceeds are usually small in number, and their identities are virtually always known.  Finally, a court can accurately determine the respective shares of the fund accruing to each beneficiary, and it can spread a proportionate share of attorneys' fees to each beneficiary "with some exactitude."  Accordingly, we hold that a trial court may, in its discretion, apply the common fund doctrine in a successful wrongful death action, thereby requiring the passive beneficiaries to pay a reasonable attorneys' fee to the party bringing the action.

---

[7] See Wheeler v. Burley, No. 01A01-9701-CV-00006 (Tenn. Ct. App. filed at Nashville, Aug. 27, 1997), *perm. to appeal denied*, Apr. 13, 1998; see also PST Vans, Inc. v. Reed, No. E1999-01963-COA-R3-CV (Tenn. Ct. App. Dec. 28, 1999); In re Stout, No. 01A01-9308-CH-00360 (Tenn. Ct. App. filed at Nashville, June 29, 1994).

[8] See, e.g., Alaska Pulp Corp., 920 P.2d at 756 n.9; Community Care Ctrs., Inc. v. Indiana Family & Soc. Servs. Admin., 716 N.E.2d 519, 547 (Ind. Ct. App. 1999); Wisconsin Retired Teachers Ass'n, Inc. v. Employee Trust Funds Bd., 558 N.W.2d 83, 98 (Wis. 1997).

[9] As we discuss below, the surviving spouse has a statutory priority to assert a wrongful death action, but this statutory priority obviously does not "control the disposition of a recovery of damages for wrongful death" or otherwise affect the legal interests of the beneficiaries in the fund itself.  See Gilliam ex rel. Gilliam v. Calcott, __ S.W.3d __, __ (Tenn. Ct. App. 2000).  Because the claims against the fund, therefore, all stand on equal footing with respect to each other, application of the common fund doctrine under these circumstances is appropriate.

*STATUS OF SURVIVING CHILDREN AS BENEFICIARIES*
*TO A WRONGFUL DEATH ACTION*

Having concluded that trial courts may generally apply the common fund doctrine in this context, the second issue we must resolve, then, is whether the children in this action, who hired separate counsel to represent their interests, should nevertheless be required to pay a fee to the appellant's attorney. The children's attorneys argue that they contributed to procuring the final settlement, and a majority of the Court of Appeals believed that the record failed to support the trial court's conclusion that their efforts were not needed to settle the case. However, we need not address whether the evidence supports the findings of the trial court in this regard, because we conclude that the children must be considered, as a matter of law, to be passive beneficiaries of the wrongful death proceeds.

The parties do not dispute that the statutes permitting an action for the wrongful death of another create "no right of action exist[ing] independently of that which the deceased would have had, had [he or she] survived." See Rogers v. Donelson-Hermitage Chamber of Commerce, 807 S.W.2d 242, 245 (Tenn. Ct. App. 1990); Memphis St. Ry. Co. v. Cooper, 203 Tenn. 425, 431, 313 S.W.2d 444, 447 (1958). Although the living beneficiaries of the action may seek a limited recovery for their own losses in addition to those of the decedent, see Hill v. City of Germantown, 31 S.W.3d 234, 239 (Tenn. 2000); Jordan v. Baptist Three Rivers Hosp., 984 S.W.2d 593, 598 (Tenn. 1999), the right of action itself remains one that is "single, entire[,] and indivisible." See Wheeler v. Burley, No. 01A01-9701-CV-00006 (Tenn. Ct. App. filed at Nashville, Aug. 27, 1997), *perm. to appeal denied*, Apr. 13, 1998. In point of fact, therefore, "[t]here can be but one cause of action for the wrongful death of another." Matthews v. Mitchell, 705 S.W.2d 657, 660 (Tenn. Ct. App. 1985).

Because multiple actions may not be brought to resolve a single wrongful death claim, the statutes carefully prescribe the priority of those who may assert the action on behalf of the decedent and any other beneficiaries. In a dispute between the surviving spouse and the children of the decedent as to who may maintain the action, the surviving spouse clearly has "the prior and superior right above all others . . . ." Foster v. Jeffers, 813 S.W.2d 449, 451 (Tenn. Ct. App. 1991); see also Tenn. Code Ann. § 20-5-107 (1994); Busby v. Massey, 686 S.W.2d 60, 62 (Tenn. 1984). In fact, the children of the deceased may maintain an action only if the decedent is not survived by a spouse or if the surviving spouse has waived his or her right of priority. See Tenn. Code Ann. § 20-5-107; Foster, 813 S.W.2d at 453. Consequently, once the surviving spouse has asserted his or her right or priority, the statutes give to the surviving spouse complete "control over the right of action until he or she waives that right." Estate of Baker ex rel. Baker v. Maples, 995 S.W.2d 114, 115 (Tenn. Ct. App. 1999).

As part of this right of control over the action, the surviving spouse is entitled to control the litigation and to hire the attorney or attorneys needed to prosecute the action. More importantly, however, the surviving spouse also has the discretion either to litigate the claim or to settle it in a manner that is binding upon the children. See Tenn. Code Ann. § 20-5-110(b). Therefore, absent proof of bad faith or lack of diligence in representing their interests, see Busby, 686 S.W.2d at 63,

the children of a decedent simply have no right to representation under these circumstances except through the surviving spouse. Although the surviving spouse may consent to other assistance in litigating or settling the wrongful death claim, he or she is under no statutory obligation to do so.

Upon considering the procedural character of the wrongful death statutes in Tennessee, we conclude that the children in this case possessed no privilege to employ separate counsel to protect their interests in receiving a share of the wrongful death proceeds. As such, the wrongful death statutes place them in precisely the same situation as the typical "passive beneficiary" who does not hire separate counsel or whose separate counsel makes no meaningful contribution to the common fund itself. Cf. Gilpin, 188 Tenn. at 90, 216 S.W.2d at 737. Just as the common fund doctrine applies against typical passive beneficiaries to permit the original or lead counsel to seek additional fees from the fund itself, so must it also apply here.

As the Court of Appeals noted in its decision below, the trial court in this case essentially permitted the children to intervene in the appellant's action to establish their own damages for loss of consortium. Clearly, a claim for loss of consortium does not, in any way, represent a claim for damages separate from the wrongful death action itself. Rather, a claim for consortium merely embodies one component of the decedent's pecuniary value of life. See Hancock v. Chattanooga-Hamilton County Hosp. Auth., 54 S.W.3d 234, 237 (Tenn. 2001); Hill, 31 S.W.3d at 239; Jordan, 984 S.W.2d at 601. Consequently, to avoid situations similar to this in future cases, trial courts should dismiss *in toto* any other pending wrongful death actions upon the proper filing of an action by the surviving spouse. See Swanson v. Peterson, No. M1999-00241-COA-R3-CV (Tenn. Ct. App. Jan. 21, 2000) (citing Dockery v. Dockery, 559 S.W.2d 952, 954 (Tenn. Ct. App. 1977) (stating that a properly filed suit should be dismissed when it loses its "essential character" before adjudication)). Accordingly, we hold that the trial court may employ the common fund doctrine to award the appellant's attorney an additional fee from the children's portion of the wrongful death settlement.

### REASONABLENESS OF THE FEES TAKEN
### FROM THE COMMON FUND

Finally, counsel for the appellant argues that the Court of Appeals erred in examining the reasonableness of the fee awarded by the trial court, which amounted to one-third of the entire settlement proceeds. Instead, counsel asserts that because no one in this action argues that "one-third contingency fee contracts" are unreasonable, the intermediate court erred in remanding the case to determine the proper fee. We find no evidence that the trial court abused its discretion in awarding the appellant's attorney a fee of one-third of the common fund, and we agree with counsel that a remand for another determination of the proper fee is unnecessary.

As we have noted above, the original or lead attorney in a common fund action may seek a fee from the passive beneficiaries of the common fund—a fee in addition to that obtained from the client—to prevent the unjust enrichment of those beneficiaries. However, the case law in this state has not been clear as to how to determine the proper fee amount awarded from the other beneficiaries. As one standard, the appellant's attorney here has proposed that the percentage fee amount in his contract with the surviving spouse should also govern the percentage fee amount taken

from the children's share of the settlement. We disagree that the contract with the lead or original plaintiff should invariably govern the fees to be paid by the passive beneficiaries of a common fund.

Admittedly, this Court has had few occasions in which to address whether the attorney's contingency fee contract with the lead or original plaintiff should also determine the percentage fee that the attorney may recover from the entire common fund itself. However, in one case involving an insurance subrogation claim, we held that the insurer, as a passive beneficiary to the settlement proceeds, was "not bound by the terms of the agreement regarding compensation" between the plaintiff and the attorney. See Boston, Bates & Holt v. Tennessee Farmers Mut. Ins. Co., 857 S.W.2d 32, 35 (Tenn. 1993). Instead, we remanded the case to the trial court to determine the amount of compensation that was reasonable under the circumstances.[10]

Other courts addressing this issue have also concluded that the contract with the lead or original plaintiff should not govern the fee to be paid by the passive beneficiaries. For example, the Supreme Court of Florida has recognized that

> if the [trial] court allowed the written fee agreements to control the fee to be awarded from the common fund, it would be enforcing fee agreements to which the vast majority of class members did not consent. Thus, the fact that class counsel and the named parties agreed that attorney fees would be calculated on a percentage basis cannot control what approach the court should use in exercising its inherent power to determine reasonable attorney fees to be paid from the common fund.

Kuhnlein v. Department of Revenue, 662 So. 2d 309, 314 (Fla. 1995). The Maryland Court of Appeals has also acknowledged that "the percentage of a contingent fee in the contract between counsel for the Plaintiffs and the named Plaintiffs is not controlling." See United Cable Television of Baltimore Ltd. P'ship v. Burch, 732 A.2d 887, 903 (Md. 1999).

We agree with these authorities and hold that although the fee contract with the lead or original plaintiff is relevant to the inquiry, the contract is not determinative of the appropriate fee to be paid by the passive, noncontracting beneficiaries. Instead, trial courts should base any fee award from these beneficiaries upon the reasonable value of the attorney's services provided to them. Accord In re Polybutylene Plumbing Litig., 23 S.W.3d 428, 438 (Tex. App. 2000) ("An attorney's compensation from *noncontracting* plaintiffs under the common fund doctrine is limited to the reasonable value of the attorney's services benefitting them." (emphasis in original)). In determining a reasonable fee amount, the trial court should look to the guidelines outlined in Connors v. Connors,

---

[10] Just five months after our decision in Boston, Bates & Holt, we held that the contingency fee contract should govern the percentage fee taken from an employer's subrogation interest in a common fund. In Summers v. Command Systems, Inc., 867 S.W.2d 312 (Tenn. 1993), we held that "[a] contingent fee agreement between the employee and his lawyer will apply to the entire recovery, and the attorney's fee will reduce the employer's portion of the recovery by a pro rata amount." Summers, 867 S.W.2d at 316 (emphasis added). Our decision in that case, however, was dictated by the particular language of the workers' compensation statutes, see Tenn. Code Ann. § 50-6-112, and did not mention our previous contrary holding in Boston, Bates & Holt.

594 S.W.2d 672, 677 (Tenn. 1980) and to the factors listed in Tennessee Supreme Court Rule 8, DR 2-106.[11]

Examining the record in this case, we note that while the trial court found a one-third contingency fee from the children's portion of the settlement to be reasonable, it did not expressly consider the Connors guidelines or the factors listed in DR 2-106. In part because of the absence of these considerations, a majority of the Court of Appeals remanded the case for a redetermination of the fee. However, reversal of a fee award is not required merely because the record does not contain proof establishing the reasonableness of the fee. See Kahn v. Kahn, 756 S.W.2d 685 (Tenn. 1988). We have expressly acknowledged that "a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be." Wilson Mgmt. Co. v. Star Distribs. Co., 745 S.W.2d 870, 873 (Tenn. 1988). Should a dispute arise as to the reasonableness of the fee awarded, then "in the absence of any proof on the issue of reasonableness, it is *incumbent* upon the [party challenging the fee] to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue." See id. (emphasis added).

Although the children in this case disputed that they should pay any of the appellant's attorney's fees from their share of the settlement, they did not seek to challenge the reasonableness of those fees in the event that the award was confirmed. Consequently, the record contains no proof that the trial court abused its discretion awarding the appellant's attorney a one-third contingency fee from their portion of the settlement. By upholding the fee award here, we do not necessarily approve of similar awards in future cases, but we reaffirm the principle that the record must contain some evidence showing that an award of attorneys' fees is unreasonable under the circumstances before a reversal of that fee is warranted. Accordingly, we hold that because the record contains no evidence to show that the trial court abused its discretion in awarding fees to the appellant's attorney, the Court of Appeals improperly remanded this case for another determination of the fee.

**CONCLUSION**

In summary, we hold that a trial court may, in its discretion, generally apply the common fund doctrine to oblige the passive beneficiaries of a successful wrongful death action to pay a

---

[11] The Connors guidelines include the time devoted to performing the legal service; the time limitations imposed by the circumstances; the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; and the experience, reputation, and ability of the lawyer performing the legal service. See 594 S.W.2d at 676.

Tennessee Supreme Court Rule 8, DR 2-106(B) contains similar, though not identical, factors, including (1) "The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly"; (2) "The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer"; (3) "The fee customarily charged in the locality for similar legal services"; (4) "The amount involved and the results obtained"; (5) "The time limitations imposed by the client or by the circumstances"; (6) "The nature and length of the professional relationship with the client"; (7) "The experience, reputation, and ability of the lawyer or lawyers performing the services"; and (8) "Whether the fee is fixed or contingent."

reasonable attorneys' fee.  We also hold that because the surviving spouse has the statutory priority to bring and compromise a wrongful death action, the children in this case are considered, as a matter of law, to be passive beneficiaries to the action.  Finally, we conclude that the record here contains no evidence showing that the trial court abused its discretion in awarding fees to the appellant's attorney.  The judgment of the Court of Appeals is affirmed in part and reversed in part.

Costs of this appeal are assessed to the appellees, Lori Michelle Kline, Kristy Laine Kline, and Diana Marie Kline, by their next friend, mother, and natural guardian, Marcia Kline Newcomb.

_____
WILLIAM M. BARKER, JUSTICE