IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 3, 2024 Session

## BURMA ANDERSON v. SAINT THOMAS MIDTOWN HOSPITAL ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 23C2293   Joseph P. Binkley, Jr., Judge**

———————————————————

**No. M2024-00687-COA-R9-CV**

———————————————————

This appeal presents the question of whether, under the Health Care Liability Act, a party in a wrongful death action can rely on a prior beneficiary's pre-suit notice after succeeding to that beneficiary's interest in the wrongful death litigation. The trial court concluded that such reliance is permissible. We affirm.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Affirmed**

JEFFREY USMAN, J., delivered the opinion of the court, in which ANDY D. BENNETT and W. NEAL MCBRAYER, JJ., joined.

Brian W. Holmes, Victoria L. Rohloff, J. Eric Miles, and Linda A. Nathenson, Nashville, Tennessee, for the appellants, Saint Thomas Midtown Hospital d/b/a Ascension Saint Thomas Hospital, and Anesthesia Medical Group, P.C.

Luvell L. Glanton, Luvell L. Glanton, Jr., and Daimon S. Duggar, Nashville, Tennessee, for the appellee, Burma Anderson.

**OPINION**

I.

Burma Anderson's daughter, Latosha Page, received medical treatment at Saint Thomas Midtown Hospital (St. Thomas) from June 7 through June 24 of 2022. Ms. Anderson alleges that her daughter was injured and ultimately died from a negligently performed intubation and negligent subsequent care. In August 2022, less than two months after Ms. Page's death, Ms. Anderson endeavored to provide pre-suit notice to St. Thomas of a potential health care liability claim. Ms. Anderson did so despite Ms. Page having a

surviving spouse.

St. Thomas informed Ms. Anderson that it had received the notice but indicated that it would not identify other potential defendants because it lacked proof Ms. Anderson was legally authorized to act on behalf of Ms. Page or her estate. *See* Tenn. Code Ann. § 29-26-121 (requiring pre-suit notice); Tenn. Code Ann. § 20-5-107(a) (a wrongful death action "may be instituted by the personal representative of the deceased or by the surviving spouse in the surviving spouse's own name, or, if there is no surviving spouse, by the children of the deceased or by the next of kin. . . .").

Shortly thereafter, in November 2022, Ms. Page's estranged husband, Gerald Page, proceeded to serve pre-suit notice on St. Thomas. St. Thomas named other potential defendants, including an anesthesia group and two anesthesia providers. Mr. Page sent pre-suit notice to all the potential defendants on January 1, 2023.

In March 2023, Ms. Anderson filed a petition in probate court to be appointed the Administratrix ad Litem for the wrongful death action. It was not until July 13, 2023, after the expiration of the one-year statute of limitations, that the court appointed Ms. Anderson as Administratrix ad Litem for the wrongful death action, finding that Mr. Page had abandoned the decedent under Tennessee Code Annotated section 36-4-101.

Two days later, on July 15, 2023, Ms. Anderson attempted again to serve pre-suit notice on the medical defendants. She subsequently filed her complaint on September 29, 2023, less than 120 days after the expiration of the statute of limitations. *See* Tenn. Code Ann. § 29-26-121(c) (providing for a 120-day extension of the limitations period when pre-suit notice is provided). Therein, Ms. Anderson alleged that

> [a]s a direct and proximate result of the negligence and the breach of the standard of care of the Defendants as described herein, the decedent, Latosha Page suffered pain and suffering, medical expenses, loss of enjoyment of life and subsequently the value of her life along with funeral expense and lost wages. Plaintiff Burma Anderson suffered the loss of her daughter's services, companionship and consortium.

The medical Defendants moved to dismiss, asserting that the action was filed outside the limitations period and that pre-suit notice pursuant to Tennessee Code Annotated section 29-26-121 was not timely served by Ms. Anderson. They argued that the August 2022 pre-suit notice was not compliant with the statute because it did not name the anesthesiology defendants, because it did not allow St. Thomas to obtain medical records from those defendants, and because Ms. Anderson was not, at the time, the correct party to bring suit. They further contended that the pre-suit notice filed by Mr. Page, the correct party in the wrongful death action at the time, did not act to extend the limitations period as to Ms. Anderson. Ms. Anderson responded that the notice provided by Mr. Page

was sufficient even though he was later determined not to be the proper party under Tennessee Code Annotated section 20-5-107. She argued that notice of the wrongful death action substantially complied with the statute and that there was no prejudice.

The trial court denied the motion to dismiss. The court found that Ms. Anderson had become the proper party to bring a wrongful death action and "that the pre-suit notice filed on behalf of Gerald Page is still a valid pre-suit notice that the plaintiff can rely upon even though the person — . . . the person bringing the wrongful death case changed." The medical Defendants sought and were granted an interlocutory appeal, asserting that Ms. Anderson's suit should be dismissed because the pre-suit notice provided by Mr. Page was ineffective as to Ms. Anderson's claims.

II.

A motion to dismiss under Tennessee Rule of Civil Procedure 12.02(6) is the proper method to challenge the plaintiff's alleged failure to file pre-suit notice under the Health Care Liability Act (HCLA). *Ellithorpe v. Weismark*, 479 S.W.3d 818, 823 (Tenn. 2015). Such a motion "challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence." *Id.* at 824. In evaluating a Rule 12.02(6) motion for failure to state a claim upon which relief can be granted, this court construes the complaint liberally, presumes that the factual allegations of the complaint are true, and draws reasonable inferences in favor of the plaintiff. *Cooper v. Mandy*, 639 S.W.3d 29, 33 (Tenn. 2022). "A motion to dismiss should be granted only if it appears that 'the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Ellithorpe*, 479 S.W.3d at 824 (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). We review the denial of a motion to dismiss de novo with no presumption of correctness. *Myers v. AMISUB (SFH), Inc.*, 382 S.W.3d 300, 307 (Tenn. 2012).

This case involves the interpretation of the statutes governing the HCLA and wrongful death actions. We review questions of statutory interpretation de novo. *Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 330-31 (Tenn. 2020). "We give the words of the Act 'their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose,' and we apply the Act's plain meaning when it is clear, enforcing the statute as written." *Cooper*, 639 S.W.3d at 33 (quoting *Ellithorpe*, 479 S.W.3d at 827). When statutory language is unambiguous, we simply apply its plain meaning in ordinary use. *Stevens ex rel. Stevens v. Hickman Cmty. Health Care Servs., Inc.*, 418 S.W.3d 547, 553 (Tenn. 2013). "We avoid constructions that place one statute in conflict with another and endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws." *In re Neveah M.*, 614 S.W.3d 659, 676 (Tenn. 2020) (quoting *State v. Frazier*, 558 S.W.3d 145, 152-53 (Tenn. 2018)).

- 3 -

III.

The medical Defendants argue that Ms. Anderson has failed to strictly comply with the requirement of sending pre-suit notice and that her action must be dismissed for failure to file within the limitations period, which they contend was not extended by Mr. Page's pre-suit notice. Whether the pre-suit notice in this case was effective as to Ms. Anderson raises an issue which lies at the intersection of two statutory schemes. The HCLA requires a person asserting a claim, such as a claim for medical negligence, to give notice to the defendants prior to filing suit. *See* Tenn. Code Ann. § 29-26-121(a). A separate statutory scheme governs the abatement, survival, nature, and transference of wrongful death claims. *See* Tenn. Code Ann. § 20-5-106 *et seq*.

We begin by examining the mandates of the HCLA. Tennessee Code Annotated section 29-26-121(a)(1) dictates that when an action is filed under the HCLA, "[a]ny person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim to each health care provider that will be a named defendant at least sixty (60) days before the filing of a complaint . . . ." When pre-suit notice is filed, the statute of limitations is extended for 120 days. Tenn. Code Ann. § 29-26-121(c). The notice must include certain information, including "[t]he name and address of the claimant authorizing the notice and the relationship to the patient, if the notice is not sent by the patient." *Id*. § 29-26-121(a)(2)(B). While the content of the notice is directory and may be satisfied by substantial compliance, the filing of the notice itself is mandatory and requires strict compliance. *Martin*, 600 S.W.3d at 331.

Pre-suit notice is intended to afford defendants notice of the potential claim and to allow them to investigate the merits of the claim and pursue settlement. *Runions v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 549 S.W.3d 77, 86 (Tenn. 2018). The notice should include information regarding the claimant authorizing notice in order to "facilitate early resolution of healthcare liability claims by requiring plaintiffs to advise defendants who the plaintiff is, how to reach him or her, and how to contact his or her attorney." *Stevens ex rel. Stevens*, 418 S.W.3d at 554. However, a "less-than-perfect" compliance with the requirements for the contents of pre-suit notice "should not derail a healthcare liability claim" because "[n]on-substantive errors and omissions will not always prejudice defendants." *Id.* at 555 (examining errors in Health Insurance Portability and Accountability Act (HIPAA) compliance under subsection -121(a)(2)(E)).

The Tennessee Supreme Court has explained that the plaintiff bears the initial burden of showing compliance with the pre-suit notice provision by attaching documents to the complaint or by alleging extraordinary cause for noncompliance.[1] *Martin*, 600

---

[1] There is no argument presented here regarding extraordinary cause for noncompliance. *See Martin*, 600 S.W.3d at 334.

S.W.3d at 334. If the defendant wishes to challenge compliance, the defendant may move to dismiss. *Id.* The defendant must describe how the plaintiff was noncompliant with the pre-suit notice requirement and also "the extent and significance of the plaintiff's errors and omissions and whether the defendant was prejudiced by the plaintiff's noncompliance." *Id.* (quoting *Stevens*, 418 S.W.3d at 556). In particular, prejudice may be shown by demonstrating "how the noncompliance frustrated or interfered with the purposes of Section 121 or deprived the defendant of a benefit Section 121 confers." *Id.* If the defendant's motion makes the foregoing prima facie showing, the plaintiff bears the burden of establishing substantial compliance, including a lack of prejudice. *Id.* at 335.

The Defendants argue that no proper pre-suit notice under the HCLA was given by Ms. Anderson and that accordingly she is not entitled to benefit from an extension of the limitations period.[2] They note that a claimant must demonstrate strict compliance with the delivery of notice, although the content may be satisfied by substantial compliance. *See Martin*, 600 S.W.3d at 331. Ms. Anderson responds that, under the statutes governing wrongful death actions, the pre-suit notice served by the decedent's estranged husband extends the limitations period for the subsequent wrongful death action, even when such an action passes to a new beneficiary.

Under the statutes governing wrongful death actions, when tortious conduct results in death, the right of action "shall not abate or be extinguished by the person's death but shall pass to the person's surviving spouse and, in case there is no surviving spouse, to the person's children or next of kin." Tenn. Code Ann. § 20-5-106(a). While a wrongful death action passes by law to the surviving spouse, the court may determine that the spouse's right of action is waived "if the children or next of kin establish the surviving spouse has abandoned the deceased spouse as described in § 36-4-101(a)(13) or otherwise willfully withdrawn for a period of two (2) years." Tenn. Code Ann. §§ 20-5-106(c)(1); -107(e)(1). The statute furthermore provides, "**In no event shall any action for wrongful death abate, or the statute of limitations bar, an action solely as a result of a finding the surviving spouse's rights are waived.** Instead the court shall substitute the proper party." Tenn. Code Ann. § 20-5-107(e)(4) (emphasis added).

Tennessee courts have examined the nature of a wrongful death action and the mechanism by which such an action passes among parties, and caselaw sheds light on whether Ms. Anderson's claim is separate and distinct from Mr. Page's claim. Tennessee's wrongful death statutes represent a hybrid scheme with characteristics of both "survival" statutes and "pure wrongful death" statutes. *Beard v. Branson*, 528 S.W.3d 487, 497 (Tenn.

---

[2] In a footnote, Defendants contend that Ms. Anderson's own August 2022 notice, which was sent shortly after the decedent's death, is inadequate because she was not, at the time, the correct party to bring suit and "did not have authority to give notice at that time." Ms. Anderson does not rely on the August 2022 notice, and we do not address this argument. The parties agree that the relevant notice is that provided in January 2023 by Mr. Page.

2017). In a true survival statute, the cause of action is vested in the victim at the time of death, and the damages are limited to those to which the decedent would have been entitled. *Id.* at 496-97. On the other hand, pure wrongful death statutes create a new cause of action in the survivors; thus, the individual beneficiaries may be compensated for the economic loss they suffered due to the decedent's death. *Id.* at 497. Tennessee's statutory scheme provides that the decedent's right of action passes to survivors and also that the wrongful death action is for the benefit of the statutory beneficiaries and not the estate. *Id.* (citing Tenn. Code Ann. §§ 20-5-106(a); -107(a); -110(a)). Accordingly, recovery is both "for the mental and physical suffering, loss of time and necessary expenses resulting to the deceased" and "also the damages resulting to the parties for whose use and benefit the right of action survives." Tenn. Code Ann. § 20-5-113; *Beard*, 528 S.W.3d at 498. Recovery for wrongful death in Tennessee in part aligns with pure wrongful death statutes, as the damages are not available to claims from the decedent's creditors. *Id.* at 498-99. The Tennessee Supreme Court has observed, however, that like survival statutes, Tennessee's wrongful death scheme does not create a new cause of action in the beneficiaries but "preserve[s] whatever cause of action the decedent had at the time of death." *Id.* at 499 (citing, e.g., *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593, 598 (Tenn. 1999); *Ki v. State*, 78 S.W.3d 876, 880 (Tenn. 2002); *Kline v. Eyrich*, 69 S.W.3d 197, 206-07 (Tenn. 2002)). Accordingly, the surviving spouse has complete control of the claim, including the power to settle it in a manner binding on the children or future beneficiaries, unless the right to control the action is waived. *Id.*

There can only be one claimant in a wrongful death action. *Ki*, 78 S.W.3d at 880 (the statute "creates one claim or right of action"); *Beard*, 528 S.W.3d at 500-01. This is because it is "one indivisible right of action." *Beard*, 528 S.W.3d at 501; *Kline*, 69 S.W.3d at 207 (noting that the statute delineates the priority of beneficiaries because multiple actions cannot be brought). "[A]lthough the wrongful death statutes allow for consortium-type damages as an element of the pecuniary value of the decedent's life, those damages still 'arise pursuant to the right of action vested in the decedent.'" *Beard*, 528 S.W.3d at 500 (quoting *Ki*, 78 S.W.3d at 880). There is no right of action independent from what right the decedent would have had, and "the right of action is 'single, entire[,] and indivisible.'" *Id.* at 501 (quoting *Kline*, 69 S.W.3d at 207). Indeed, the "beneficiaries do not have an individual claim or cause of action for the wrongful death of the decedent." *Ki*, 78 S.W.3d at 880. The statute does not create "any new, independent cause of action in [survivors]." *Jordan*, 984 S.W.2d at 598 (quoting *Whaley v. Catlett*, 53 S.W. 131, 133 (Tenn. 1899)). Any claim for loss of consortium merely "embodies one component of the decedent's pecuniary value of life." *Beard*, 528 S.W.3d at 501 (quoting *Kline*, 69 S.W.3d at 208). The wrongful death action represents a claim that transfers to the spouse upon the decedent's death. *Id.* at 502, 506 (concluding that the spouse was not acting as a representative of the decedent, that he was prosecuting the claim for his own benefit and that of other beneficiaries, and that a pro se complaint brought by the spouse could be amended to add the children after the limitations period).

- 6 -

The Tennessee Supreme Court has held that when the incorrect party under the statute files a wrongful death action, the correct party can be substituted even if the statute of limitations has expired in the intervening time. *Chapman v. King*, 572 S.W.2d 925, 928-29 (Tenn. 1978). In such cases, "the cause of action is not changed by the substitution of the proper party plaintiff for the improper plaintiff," and "such a substitution does not prejudice the defendant who has had notice, from the beginning of the suit, of the nature of the cause of action and that it was being pressed against him." *Id.* at 928; *see Beard*, 528 S.W.3d at 505. In *Chapman v. King*, the action was instituted by the decedent's parents rather than the surviving spouse, but the court nevertheless permitted substitution, although the limitations period had expired. *Chapman*, 572 S.W.2d at 929. Likewise, in *Foster v. St. Joseph Hospital*, a wrongful death action was filed by the wrong party, dismissed, and refiled on behalf of both the original (incorrect) party and also the surviving spouse. 158 S.W.3d 418, 420-21 (Tenn. Ct. App. 2004). This court concluded that the savings statute allowed the surviving spouse to pursue the action even though the statute of limitations had expired because, "[d]espite the defects of the pleadings in the instant case, from the time they received service of process in the first action, the Defendants have been on notice that they would have to defend themselves against allegations of medical malpractice arising out of [decedent's] death." *Id.* at 425. Furthermore, the addition of the surviving spouse in the second action cured the defect "with no prejudice to the Defendants." *Id.*

In the present case, the Defendants assert that Ms. Anderson simply did not give pre-suit notice and that she was required to strictly comply with the requirement to send such notice. The Defendants' argument that pre-suit notice was ineffective is premised on the proposition that Mr. Page's notice does not satisfy Ms. Anderson's obligation to give notice, which was a separate obligation for her separate claim. While a Tennessee wrongful death action is not without complexity, the Defendants' understanding of the nature of a wrongful death action is inconsistent with the Tennessee Supreme Court's jurisprudence.

The Defendants rely heavily on *Denson ex rel. Denson v. Methodist Med. Ctr. of Oak Ridge*, No. E2023-00027-COA-R9-CV, 2023 WL 6626763 (Tenn. Ct. App. Oct. 12, 2023), *rev'd*, No. E2023-00027-SC-R11-CV, 2025 WL 2902229, at *1 (Tenn. Oct. 13, 2025), where this court held pre-suit notice was insufficient when the decedent's mother did not identify the decedent's children as claimants until the filing of the complaint. However, the Tennessee Supreme Court reversed that decision subsequent to the arguments lodged in this appeal. *Denson ex rel. Denson v. Methodist Med. Ctr. of Oak Ridge*, __ S.W.3d __, No. E2023-00027-SC-R11-CV, 2025 WL 2902229, at *1 (Tenn. Oct. 13, 2025).

In *Denson*, the decedent's mother sent pre-suit notice identifying herself as the claimant authorizing notice under the statute; the decedent's minor children were not mentioned in the pre-suit notice. *Id.* at *1. The lawsuit was pursued solely on behalf of the minor children. *Id.* at *1 n.2. The Tennessee Supreme Court found that the decedent's mother, who was authorized to act for the minor children because they could not act for

themselves, was the "claimant authorizing the notice" under Tennessee Code Annotated section 29-26-121(a)(2)(B) even though she was not ultimately the one asserting claims in the lawsuit. *Id.* at *5. The Court pretermitted analysis of whether the decedent's mother was the claimant as a potential beneficiary of the claim. *Id.* In concluding that pre-suit notice was properly given, the Court stated that the decedent's mother "achieved actual compliance with Tennessee Code Annotated section 29-26-121 when she identified herself and not the minor children as the claimant authorizing notice" even though the notice did not inform the defendants that the claimants in the lawsuit would be the minor children. *Id.* Accordingly, *Denson* does not strengthen the Defendants' case; rather, it indicates that the identity of the "claimant authorizing notice" need not be identical with the claimant in the lawsuit.

The Defendants also rely on *Igou v. Vanderbilt University* for the proposition that Ms. Anderson may not satisfy the notice requirement with the notice given by Mr. Page. No. M2013-02837-COA-R3-CV, 2015 WL 1517794 (Tenn. Ct. App. Mar. 27, 2015). In *Igou*, the medical defendants were given notice of an injury by the surviving patient, but the patient's wife, who later asserted a loss of consortium claim, did not give separate notice.[3] *Id.* at *1. The *Igou* court concluded that the wife was a separate claimant from the surviving spouse and that she was required to comply with the notice provision. *Id.* at *7.

In contrast, a wrongful death action in Tennessee does not create "any new, independent cause of action in [survivors]" and in theory merely preserves the cause of action the decedent would have had. *Jordan*, 984 S.W.2d at 598 (quoting *Whaley*, 53 S.W. at 133). The Tennessee Supreme Court has distinguished between a loss of consortium claim asserted in conjunction with spousal injury and one asserted as part of a wrongful death action. *Ki*, 78 S.W.3d at 880. In *Ki*, the decedent's two parents each wished to recover for wrongful death and loss of consortium. *Id.* The Court held that the statute allowed for loss of consortium, but that "[m]ore than one claimant is not created in a wrongful death action . . . simply because beneficiaries may be compensated for their individual losses as a part of the decedent's right of action or claim." *Id.* The Court acknowledged the anomaly that in a spousal injury case "two 'claimants' may exist because the non-injured spouse may maintain a separate cause of action or claim for loss of consortium pursuant to statute," allowing each to recover under the statutory cap. *Id.* "In a wrongful death action, however, loss of consortium is only a part of the recoverable damages in the decedent's right of action" and only one claimant can recover. *Id.* Accordingly, under *Ki*, a case asserting a spousal injury, such as *Igou*, is not on point with a case asserting wrongful death, where the loss of consortium is not an independent claim but part of the pecuniary value of life.

The Defendants also assert that the trial court erred in concluding that the decedent's

---

[3] The Defendants in the present case do not advance any argument regarding the dismissal of the loss of consortium claim as separate from the dismissal of the action as a whole.

estate was the claimant in the wrongful death action. The trial court's order does not contain such a finding; instead, the court stated that the next-of-kin was "just a person bringing the wrongful death action," and that the pre-suit notice is valid even if "the person bringing the wrongful death case changed." We read this as a statement that there is one wrongful death action which may pass among beneficiaries as designated in the statute. *See Beard*, 528 S.W.3d at 498. While the Defendants are correct that the decedent's estate is not the claimant, *id.*, they have overlooked the crux of the trial court's reasoning, which is that the wrongful death claim is singular and indivisible.

Ultimately, because a Tennessee wrongful death action is one, indivisible claim, and because Defendants do not dispute that they received pre-suit notice of that one, indivisible claim, we conclude that the pre-suit notice sent by Mr. Page was sufficient as to Ms. Anderson when the cause of action passed from him to her. Ms. Anderson is not a separate claimant in her own right, *see Ki*, 78 S.W.3d at 880 ("beneficiaries do not have an individual claim or cause of action for the wrongful death of the decedent"); rather, the single, indivisible claim simply passed to Ms. Anderson once Mr. Page had been disqualified, the same way that the claim passed to Mr. Page upon the decedent's death.

The statute requires that "[a]ny person, or that person's authorized agent, asserting a potential claim for health care liability shall give written notice of the potential claim." Tenn. Code Ann. § 29-26-121(a)(1). Defendants received written notice of the potential claim from Mr. Page, the person who was then asserting it. That same claim, which is singular and indivisible, has now passed to Ms. Anderson. Mr. Page can no longer assert the claim; instead, Ms. Anderson is prosecuting the wrongful death action, which is the same one for which Mr. Page sent notice.

As in *Denson*, Mr. Page properly gave his information as the "claimant authorizing the notice" because he was the proper party to authorize notice at the time. *See Denson*, 2025 WL 2902229, at *5. We conclude this satisfies the statute. Furthermore, the wrongful death statute mandates that "[i]n no event shall any action for wrongful death abate, or the statute of limitations bar, an action solely as a result of a finding the surviving spouse's rights are waived. Instead the court shall substitute the proper party." Tenn. Code Ann. § 20-5-107(e)(4). Such substitution is what has occurred in this case. Ms. Anderson was merely substituted as the party bringing the claim. When a wrongful death claim passes per statute to a new beneficiary, that new beneficiary can rely on the prior beneficiaries' actions in prosecuting the same single, indivisible claim. If we were to conclude otherwise, the decision would directly contradict the statutory mandate that the statute of limitations shall not bar a wrongful death action solely due to a finding that the surviving spouse's rights were waived. Such a reading of the statute would defy our mandate to "avoid constructions that place one statute in conflict with another and [to] endeavor to resolve any possible conflict between statutes to provide for a harmonious operation of the laws." *In re Neveah M.*, 614 S.W.3d at 676 (quoting *Frazier*, 558 S.W.3d at 152-53). In addition to creating statutory discord, we note that, under the Defendants' reading, it was absolutely

impossible for Ms. Anderson to give effective notice, because if she had given notice prior to July 13, she would have been the wrong party, and notice past that date would have fallen outside the limitations period.[4]

The Defendants also argue that substitution in a wrongful death action under Tenn. Code Ann. § 20-5-107(e)(4) and -106(c)(1) can only occur once an action is commenced. The Defendants rely on a statement in *Chapman* that "the substitution of the name of the proper plaintiff has relation **to the commencement** of the suit." *Chapman*, 572 S.W.2d at 928 (quoting *Wallis v. United States*, 102 F. Supp. 211, 212 (E.D.N.C. 1952)) (emphasis added). They likewise point to *Owen v. Grinspun*, where this court concluded that the substitution of a party could not relate back to a filing that was a nullity because the plaintiff was deceased at the time of filing. 661 S.W.3d 70, 85 (Tenn. Ct. App. 2022).

Respectfully, these cases do not bear the weight the Defendants put upon them. *Chapman* merely stands for the proposition that the statute of limitations does not defeat the proper party being substituted into a lawsuit which was itself timely commenced; it does not address pre-suit substitution or notice at all. *Owen* is also not on point; it was not even a wrongful death action, but one for personal injury. 661 S.W.3d at 83 (distinguishing wrongful death actions). *Owen* does not address whether a plaintiff in a wrongful death action can be substituted prior to filing the action. Simply put, these cases are not analogous to the case at bar, which presents the question of whether the new wrongful death beneficiary may use the extension of the statute of limitations obtained by the prior beneficiary. The Defendants assert that "substitution in pre-suit notice is not possible" but cite no authority to support this contention. *See* Tenn. R. App. P. 27(a)(7) (requiring citations to authorities in the argument); *Napier v. Napier*, No. M2019-00978-COA-R3-CV, 2020 WL 4299404, at *10 (Tenn. Ct. App. July 27, 2020) ("Moreover, arguments that are merely skeletal or not properly supported by citation to authority are also waived.").

Furthermore, the Defendants' argument disregards the statutory language itself. The statute states that "the right **to institute** . . . a wrongful death action granted by this section to a surviving spouse **shall be waived**, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse." Tenn. Code Ann. § 20-5-107(e)(1) (emphasis added); *see* Tenn. Code Ann. § 20-5-106(c)(1) ("the right **to institute** and the right to collect any proceeds from a wrongful death action granted by this section to a surviving spouse **shall be waived**, if the children or next of kin establish the surviving spouse has abandoned the deceased spouse" (emphasis added)). To "institute" an action is to begin or commence it. *Institute*, Black's Law Dictionary (12th ed. 2024) ("To begin or start; commence"). When the court has made "a finding the surviving spouse's rights are waived," "the court shall substitute the proper party." Tenn. Code Ann. § 20-5-107(e)(4).

---

[4] Ms. Anderson timely filed for substitution. She does not control the timing of the probate court's decision to conclude that Mr. Page had waived his right and that Ms. Anderson should instead be substituted.

- 10 -

Accordingly, the statutory language itself contemplates that the right "to institute" an action may be waived through abandonment and that a substitution "shall" occur on a finding of waiver.  Such a waiver and substitution, by definition, occur prior to the action having been commenced.  Accordingly, we conclude that the plain statutory language does not support the Defendants' reading.  Simply stated, the pre-suit notice provided by the estranged spouse was adequate to satisfy the mandatory notice provision of Tennessee Code Annotated section 29-26-121(a)(1) with regard to the beneficiary who succeeded in interest to the single, indivisible wrongful death claim.

IV.

For the aforementioned reasons, we affirm the judgment of the Circuit Court for Davidson County.  Costs of this appeal are taxed to the appellants, Saint Thomas Midtown Hospital, and Anesthesia Medical Group, P.C., for which execution may issue if necessary.  The case is remanded for further proceedings consistent with this opinion.

s/ Jeffrey Usman
JEFFREY USMAN, JUDGE