# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs September 2, 2014

## IN RE TEVEN A.

**Appeal from the Juvenile Court for Davidson County**
**No. PT147110     Sophia Brown Crawford, Judge**

**No. M2013-02519-COA-R3-JV** - **Filed December 29, 2014**

This appeal arises from the modification of Father's parenting time and the juvenile court's allocation of child support obligations. Father petitioned to modify custody or, alternatively, the residential parenting schedule. The juvenile court found that there had been no material change in circumstance and did not modify the primary residential parent designation. However, the court decreased Father's parenting time and increased his child support obligation. Father appeals the juvenile court's finding of no material change in circumstance, the modification of his parenting time, and the juvenile court's failure to apply a credit for transportation costs against his child support obligation. Because we find the juvenile court applied an incorrect legal standard and failed to comply with Rule 52.01 of the Tennessee Rules of Civil Procedure, we vacate the judgment and remand for entry of an order with appropriate findings of fact and conclusions of law.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Cynthia Greene-Campbell, Nashville, Tennessee, for the appellant, Tunja A.

No brief filed on behalf of the appellee, Matrice W.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Teven A.[1] was born in early 2005 out of wedlock to Tunja A. ("Father") and Matrice W. ("Mother"). Later that year, Father petitioned the Juvenile Court[2] for Davidson County to establish paternity and set visitation. The parties subsequently agreed that Father was Teven's biological and legal father, and Mother was made the primary residential parent. By order entered on November 21, 2005, the juvenile court set the parties' parenting time. Father was granted two days of overnight visitation with the child every other week. On the alternate weeks, Father was granted one day of visitation with the child when Father was not working. Additionally, Father had four weeks of summer visitation with Teven. The parties evenly shared Christmas visitation each year and alternated visitation on other holidays. The court also ordered Father to pay $703.00 per month in child support.

In 2008, the parties reconciled, and Father's child support obligation was terminated because the parties were living together. The record does not reveal when the parties separated or stopped living together. However, following a hearing on January 14, 2011, the juvenile court entered an Agreed Order Setting Child Support requiring Father to pay $276.00 in monthly child support and to provide medical insurance for Teven. The order also granted Father reasonable visitation rights "as agreed to by the parties" with the proviso that either party could petition the court for a specific order of visitation if they were unable to agree.

In September 2011, Father petitioned to modify custody, claiming there had been a material change in circumstance since the January 14, 2011 order.[3] Specifically, Father alleged the following changed circumstances: (1) Mother had threatened to remove Teven from the magnet school he attended; (2) Mother was unemployed; (3) Mother had parties at home while Teven was present; (4) Mother placed Teven in the care of her sister, where he experienced unsafe and unhygienic living conditions; (5) Mother frequently became "irate"

---

[1] In parts of the record, the child's first name is also spelled "Tevin."

[2] Under Tennessee Code Annotated section 37-1-104(f) (2014), "the juvenile court has concurrent jurisdiction with the circuit and chancery court of proceedings to establish the paternity of children born out of wedlock and to determine any custody, visitation, support, education or other issues regarding the care and control of children born out of wedlock."

[3] Both Father and the magistrate refer to the Agreed Order Setting Child Support as the January 14, 2011 order, but the record reflects the order was entered in March 2011. For the sake of clarity, we refer to the Agreed Order Setting Child Support as either the January 14, 2011 order or the January 2011 order.

with Father; and (6) Father often assisted Mother in paying her bills. Father also alleged that it was in Teven's best interest to live with Father and have reasonable visitation with Mother. On October 24, 2012, Mother filed an answer to the petition and counterclaim requesting that the court modify the January 2011 child support order because of a significant variance in Father's income.

A magistrate judge held a hearing on Father's petition to modify custody on May 13, 2013. The magistrate dismissed the petition finding there "[wa]s no substantial material change in circumstances in th[e] matter; therefore a change of custody [wa]s not justified." The order specified that it was "clear from the testimony of the parties that there were no circumstances that changed between the parties since the court's January 14, 2011 order granting custody to Mother." Although a change in the primary residential parent was found to be unwarranted, the magistrate concluded that the "parenting time arrangement [was] too ambiguous." Therefore, a hearing was scheduled to address parenting time and Mother's petition for child support modification.

Following a hearing held on June 10, 2013, the magistrate modified Father's parenting time and child support obligation. Other than incorporating by reference a child support worksheet, the magistrate's order contained no findings of fact or conclusions of law. Father was granted overnight visitation from Monday evening to Wednesday morning, every other week. During the alternate weeks, the court ordered that Father have visitation with Teven from Sunday evening to Monday morning. The parties continued to evenly share Christmas break, but the order did not provide for other holidays or address visitation during the summer. The court also increased Father's child support obligation to $739.00 per month and awarded Mother $3,178.00 in retroactive child support.

Father moved for a rehearing of his petition before a juvenile court judge.[4] After being granted leave by the court, Father also amended his original petition to request a change of custody or, in the alternative, equal parenting time. The amended petition alleged that there had been a material change in circumstance since the 2005 visitation order, rather than the 2011 order.

On October 11, 2013, the juvenile court judge entered an order upholding the magistrate's ruling in all respects. The ruling stated:

The court took this case under advisement upon completion of the proof

---

[4] Both Tennessee Code Annotated section 37-1-107(e) (2014) and Tennessee Rule of Juvenile Procedure 4(c)(1) permit any party to request a rehearing before a juvenile court judge of certain matters heard by a magistrate.

presented for this appeal on August 27, 2013 and October 7, 2013. After considering the evidence presented and the entire record, the court finds that the ruling by [the] Magistrate shall be upheld in all respects. This court agrees that there was not a material change in circumstance warranting a change in custody, and therefore, the order by [the] Magistrate [ ] stands. It is So Ordered.

Father appeals the juvenile court's final judgment. The issues on appeal are: (1) whether the juvenile court erred in finding no material change in circumstance to warrant a change in the primary residential parent; (2) whether the juvenile court erred by decreasing Father's parenting time and failing to grant him additional parenting time; and (3) whether the juvenile court erred by failing to give Father credit against his child support obligation for transporting the child to and from school each day.

## II. ANALYSIS

### A. Standard of Review

The "determinations of whether a material change of circumstances has occurred" and where the best interests of the child lie are factual questions. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013); *see also In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). We review the trial court's findings of fact de novo on the record, with a presumption of correctness, unless the evidence preponderates otherwise. *See, e.g.*, *Armbrister*, 414 S.W.3d at 692. In weighing the preponderance of the evidence, determinations of witness credibility are given great weight, and they will not be overturned without clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). We review the trial court's conclusions of law de novo, with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

Trial courts have discretion to determine and modify child custody and visitation arrangements. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Child support obligations are determined according to the Tennessee Child Support Guidelines, but trial courts have discretion to grant credits or otherwise deviate from presumptive child support obligations. *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

An appellate court will not interfere with discretionary decisions except upon a showing of abuse of that discretion. *See, e.g.*, *Armbrister*, 414 S.W.3d at 693; *Reeder*, 375 S.W.3d at 275, 278. A trial court abuses its discretion only if it: (1) applies an incorrect legal

standard; (2) reaches an illogical conclusion; (3) bases its decision on a clearly erroneous assessment of the evidence; or (4) employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

## B. Primary Residential Parent

By confirming the findings and recommendations of the magistrate, the juvenile court in effect found no material change in circumstance since the January 14, 2011 order sufficient to warrant a change in the primary residential parent. Father argues that the change in circumstance should have been measured from the 2005 order naming Mother primary residential parent. Alternatively, Father argues that, even measured from the 2011 agreed order, there was a material change in circumstance. Father alleges the following changed circumstances: (1) the child is older and his needs have changed; (2) the parties had reconciled and lived together after the initial order; (3) Mother's work schedule had changed; (4) Mother had interfered with Father's parenting time; and (5) Mother's sister and six nieces and nephews now lived with Mother and Teven.

We apply the two-step analysis under Tennessee Code Annotated section 36-6-101(a) (2014) to requests made in juvenile court for a modification of the primary residential parent or the residential parenting schedule. *See, e.g.*, *In re T.R.Y.*, No. M2012-01343-COA-R3-JV, 2014 WL 586046, at *11-12 (Tenn. Ct. App. Feb. 12, 2014) (primary residential parent modification); *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *11 (Tenn. Ct. App. July 31, 2013) (primary residential parent modification); *Taylor v. McKinnie*, No. W2007-01468-COA-R3-JV, 2008 WL 2971767, at *3 (Tenn. Ct. App. Aug. 5, 2008) (primary residential parent modification); *In re C.R.D.*, No. M2005-02376-COA-R3-JV, 2007 WL 2491821, at *6 (Tenn. Ct. App. Sept. 4, 2007) (parenting time modification); *In re T.C.D.*, 261 S.W.3d at 743 (primary residential parent modification). The threshold issue is whether a material change in circumstance has occurred since the court's prior custody order. *See Armbrister*, 414 S.W.3d at 697-98; Tenn. Code Ann. § 36-6-101(a)(2)(B). Only if a material change in circumstance has occurred will we determine if a modification is in the child's best interest. *Armbrister*, 414 S.W.3d at 705.

A change in circumstance with regard to a residential parenting schedule is "a distinct concept" from a change in circumstance with regard to custody. *Massey-Holt v. Holt*, 255 S.W.3d 603, 607 (Tenn. Ct. App. 2007); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). If the parent requests a modification of custody, also known as a change in the primary residential parent, then the parent must "prove by a preponderance of the evidence a material change in circumstance." *Massey-Holt*, 355 S.W.3d at 607. A material change

in circumstance in this context may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). The change must have occurred after entry of the order sought to be modified, and the change must not have been reasonably foreseeable when the prior order was entered. *See, e.g.*, *Caldwell v. Hill*, 250 S.W.3d 865, 870 (Tenn. Ct. App. 2007).

Father contends that any change in circumstance should be measured from the 2005 order naming Mother as the primary residential parent, rather than the 2011 order. For purposes of modifying the primary residential parent designation, "a change in circumstances is measured from the *final* order of custody under which the parties are operating." *In re M.J.H.*, 196 S.W.3d 731, 742 (Tenn. Ct. App. 2005) (emphasis in original). Therefore, our resolution of the primary residential parent issue turns on whether the January 14, 2011 order was a final order of custody.

We conclude that the January 2011 order was not a final order of custody. Both the title of the order, Agreed Order Setting Child Support, and its content indicate that the proceeding was primarily directed at reestablishing child support. Although the January 2011 order does include a section entitled "PARENTING TIME" that references awarding "custody" to the primary residential parent, no petition to modify custody or, more accurately, the designation of primary residential parent, was filed prior to entry of the January 2011 order. The January 2011 order was precipitated by a petition to set support filed by the State of Tennessee, who acted because Mother was receiving or had applied to receive Title IV-D services under the Social Security Act.[5] Finally, statute dictates that Title IV-D issues should be addressed by separate order rather than in combination with parenting plan issues, making it unlikely that the Agreed Order Setting Child Support was a new determination of the primary residential parent. *See* Tenn. Code Ann. § 36-6-405(c) (2014).

In light of our conclusion that the juvenile court measured the change of circumstances from an order other than the final order of custody, we must vacate the juvenile court's judgment on Father's petition to modify custody. In doing so, we note that the juvenile court's review of a magistrate's findings and recommendation is de novo. *Kelly v. Evans*, 43 S.W.3d 514, 515 (Tenn. Ct. App. 2000). Consequently, the juvenile court is required to "make such a finding as to the reason and the facts that constitute the basis for the custody determination." Tenn. Code Ann. § 36-6-101(a)(2)(B)(I). Further, the juvenile court must comply with Tennessee Rule of Civil Procedure 52.01. *See* Tenn. R. Juv. P. 1(b) ("The Tennessee Rules of Civil Procedure shall govern all cases involving . . . child custody

_____

[5] The Tennessee Department of Human Services may initiate support actions for individuals who apply for or receive assistance under the Social Security Act. Tenn. Code Ann. § 71-3-124(c) (2012).

proceedings under T.C.A. §§ 36-6-101 et seq. . . . .”); *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012).

## C. Parenting Time

The juvenile court's order also confirmed the magistrate's modification of the parties' residential parenting schedule, which decreased Father's parenting time. As with changes to the primary residential parent, juvenile courts apply a two-step process in considering modifications to residential parenting schedules. *See, e.g.*, *In re T.C.D.*, 261 S.W.3d at 746; Tenn. Code Ann. § 36-6-101(a)(2)(C). In order to adjust Father's parenting time from a previous order, there must be a predicate finding of a material change in circumstance since the prior final order. *See, e.g.*, *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at *3 (Tenn. Ct. App. Oct. 12, 2010) (explaining that the court considers whether modification of the current parenting schedule is in the child's best interests only after a determination that there has been a material change in circumstance).

The threshold for establishing a material change of circumstance where the issue before the court is a modification of the residential parenting schedule is low. *See, e.g.*, *In re C.R.D.*, 2007 WL 2491821, at *6 (citing *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007)); *see also* Tenn. Code Ann. §§ 36-6-101(a)(2)(B), -101(a)(2)(C). The petitioner must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." Tenn. Code Ann. § 36-6-101(a)(2)(C). The change must have occurred after entry of the order sought to be modified. *Caldwell*, 250 S.W.3d at 870. However, unlike the standard for a change of primary residential parent, whether the change was reasonably anticipated when the prior residential parenting schedule order was entered is irrelevant. *Armbrister*, 414 S.W.3d at 702. To modify a residential parenting schedule, "merely showing that the existing arrangement [is] unworkable for the parties is sufficient to satisfy the material change of circumstances test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006).

By confirming the findings and recommendations of the magistrate, the juvenile court in effect found a material change in circumstance based on a lack of specificity in the residential parenting schedule. We agree that the lack of specificity plus the fact that the January 14, 2011 order invited either party to petition for a specific order of visitation if they were unable to agree constitutes a material change in circumstance. However, the finding of a material change of circumstance does not end the inquiry. Once the threshold question is answered with a finding that a material change in circumstances has occurred, the trial court must determine the child's best interest. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 705.

As in every custody or visitation determination, the child's needs are paramount; the desires and behaviors of the parents are secondary. *See In re T.C.D.*, 261 S.W.3d at 742. In determining a child's best interest, courts must consider a non-exclusive list of factors found at Tennessee Code Annotated section 36-6-106(a) (2014). *See In re M.J.H.*, 196 S.W.3d at 745. We have no indication that a trial court has considered all applicable statutory factors apart from its written order. *See Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977).

Under Rule 1(b) of the Tennessee Rules of Juvenile Procedure, the Tennessee Rules of Civil Procedure apply to proceedings to determine the custody and visitation of a child born out of wedlock. *See* Tenn. R. Juv. P. 1(b); Tenn. Code Ann. § 37-1-104(f). Tennessee Rule of Civil Procedure 52.01 requires trial courts to make specific findings of fact and conclusions of law. Tenn. R. Civ. P. 52.01. "[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings." *In re Connor*, 2012 WL 5462839, at *4 (internal quotations omitted).[6] The parties themselves deserve to know the factual basis for the trial court's decision on such important matters. *Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *15 (Tenn. Ct. App. June 20, 2013). Moreover, trial courts also need to be as "precise as possible in making child custody findings" in order to facilitate appellate review. *In re Connor*, 2012 WL 5462839, at *7. Simply concluding that a modification of the residential parenting schedule is "in the child's best interest" is not enough. *See id.* at *4. Under Rule 52.01, the trial court's order should indicate why and how it reached a decision, and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012-00059, COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013).

Here, the juvenile court provided no specific factual findings or conclusions of law for the material change in circumstance analysis under section 36-6-101(a)(2)(C) or the best interest factors in Tennessee Code Annotated section 36-6-106(a). Because the court failed to follow the two-step analysis for modifying a residential parenting schedule under Tennessee Code Annotated section 36-6-101 and failed to comply with Tennessee Rule of Civil Procedure 52.01, we vacate and remand the juvenile court's judgment on this issue.

### D. Child Support Credit

Father also claims the juvenile court should have deviated from the presumptive child

---

[6]Although the *In re Connor* court was reviewing custody and parenting schedules for a child whose parents were divorced, the basic analysis regarding the best interest of the child is the same, regardless of whether the child's parents were married or unmarried when he was born.

support obligation and granted him a credit under Tennessee Child Support Guidelines 1240-2-4-.07 because he incurs extraordinary transportation expenses for Teven. We decline to review this issue in light of our conclusion that the juvenile court's judgment on the petition to modify custody, or alternatively, the residential parenting schedule, must be vacated. Child support obligations are determined, in part, by considering the primary residential parent designation and parenting time. *See* Tenn. Comp. R. & Regs., ch. 1240-2-4-.04(7) (providing for an adjustment to child support obligations based on parenting time). Because parenting time and the primary residential parent designation may change on remand, any review of Father's child support obligation would be premature.

## III. CONCLUSION

For the aforementioned reasons, the judgment of the Juvenile Court for Davidson County is vacated and remanded for further proceedings consistent with this opinion. Costs of this appeal shall be taxed to the appellant, Tunja A., and the appellee, Matrice W., equally.

_____
W. NEAL McBRAYER, JUDGE