FILED
07/18/2019
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 1, 2019

## TENNESSEE FARMERS COOPERATIVE, ET AL. v. TED D. RAINS

Appeal from the Circuit Court for Perry County
No. 2015-CV-17     Michael W. Binkley, Judge

_____

### No. M2018-01097-COA-R3-CV

_____

Defendant in a debt collection case appeals the entry of judgment against him, contending that the court erred in setting the case for trial with only two days' notice, in granting a motion *in limine* on the day of trial, and in its award of attorney's fees to the Plaintiff. We modify the judgment to reduce the amount of attorney's fees awarded; in all other respects, we affirm the judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Modified in Part and Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ARNOLD B. GOLDIN, J., joined.

Leanne A. Thorne, Lexington, Tennessee, for the appellant, Ted D. Rains.

John R. Cheadle, Jr., and Mary Barnard Cheadle, Nashville, Tennessee, for the appellee, Tennessee Farmers Cooperative.

### OPINION

#### I. FACTUAL AND PROCEDURAL HISTORY

This appeal involves an attempt to collect a debt on an open credit account. In June 2001, Ted Rains, doing business as Ag Services ("Defendant"), completed an application for revolving credit and deferred payment with Tennessee Farmers Cooperative, doing business as Co-op Financial Solutions ("Plaintiff"), to purchase goods and products for his business. Over the next 14 years, Ag Services made charges on the account and purchased goods on a cash basis. On December 14, 2015, Plaintiff filed suit against Defendant to recover the balance due on the credit account of $104,517.41; Plaintiff also sought 1.5 percent interest per month on the outstanding balance and

attorney's fees incurred in collecting the account. Defendant answered, admitting that "certain amounts of money are owing to Plaintiff" but disputing the amount alleged in the complaint.

Plaintiff filed a motion for summary judgment on March 14, 2016, accompanied by a statement of 16 material facts in accordance with Rule 56.03 of the Tennessee Rules of Civil Procedure; Defendant responded, disputing 8 of the statements. On July 11, the court entered an order granting partial summary judgment to Plaintiff, holding that Defendant owed a balance on the account but that the amount owed was a disputed material fact to be determined at trial.

Plaintiff moved for summary judgment a second time on July 31, 2017, again seeking judgment in the amount of $104,517.41; the motion was supported by a Rule 56.03 statement of undisputed material facts as well as an affidavit signed by Terry Skelton, Plaintiff's manager, which had been filed with the first summary judgment motion. In response, Defendant filed two affidavits of Mr. Rains and Defendant's responses to Plaintiff's various discovery requests. The court heard the motion on October 10 and entered an order denying the motion on November 14. Pertinent to this appeal, the court held that the case had been pending for two years, that the parties had ample time to complete discovery, and that the case would be tried before the end of the year.

The parties were unable to agree on a trial date, and on November 21, 2017, the Plaintiff moved to set the case for trial; the court heard the motion on December 18 and set the trial for December 20. On December 19, the Defendant filed a pretrial memorandum, attaching copies of cancelled checks that had been drawn on Defendant's bank account between March 7, 2014, and August 6, 2015. The Defendant asserted in the memorandum that he paid Plaintiff $81,423.57 that had not been credited to his account. At the December 20 hearing, the Plaintiff moved *in limine* to exclude the checks on the ground that they had not been produced previously; the court granted the motion, but allowed the Defendant to make the checks a part of the record by offer of proof.

The court entered an order on March 7, 2018, granting Plaintiff a judgment in the amount of $144,102.31 for the unpaid invoices and finance charges. On March 12, Plaintiff's counsel filed an affidavit requesting attorney's fees of $50,000; the court awarded $48,514.50 by order entered May 15.

Defendant timely filed a notice of appeal. Defendant argues that the trial court erred in scheduling the trial on two days' notice, in hearing and granting the motion *in limine* in contravention of the Local Rules of Court, and in granting attorney's fees in the amount of $48,514.50.

## II. ANALYSIS

Because this case was tried without a jury, the review of the trial court's factual findings is *de novo* upon the record, accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. Civ. P. 13 (d). Our review of the trial court's conclusions of law is *de novo* with no presumption of correctness. *Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). Resolution of the appeal also requires that we apply the abuse of discretion standard of review, as set forth in *Lee Medical, Inc. v. Beecher*:

> Discretionary decisions must take the applicable law and relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

312 S.W.3d 515, 524 (Tenn. 2010) (internal citations omitted).

### A. Setting of Trial Date

We first address Defendant's contention that "setting the trial on two (2) days' notice when Local Rule requires at least fifteen (15) days served no judicial purpose, and worked to prejudice the Appellant, who could have produced definitive evidence to support his defense in advance of trial." In response, Plaintiff contends that the trial date was scheduled in accordance with the fifteen (15) day requirement in Rule 7.02 of the Rules of the Circuit and Chancery Courts for the Twenty-First Judicial District.[1]

---

[1] Rule 7.02(a) and (b) of the Rules of the Circuit and Chancery Courts for the Twenty-First Judicial District reads:

Certifying Cases Ready When Set

(a) When a case is set by agreement or by motion without objection, all counsel are certifying that they, their clients, and their necessary witnesses will be available for trial on the trial date and that all discovery has been completed or will be completed prior to the selected trial date. Where a case is set by the court or by motion over the objection of one or more of the parties, the court will specify a reasonable time within which discovery is to be completed and specify a trial date which falls at least fifteen days (15) thereafter. The failure to have completed discovery, inability to take a deposition, or failure to have completed any other trial preparation will not be grounds for a continuance.

Plaintiff filed its motion to set the case for trial on November 27, with a hearing date of December 18; Defendant does not contend that he did not receive a copy of the motion or that he was not aware that the motion would be heard on December 18. The record does not show that Defendant filed a response or objection to the motion, and there is no transcript of the December 18 hearing or a statement of evidence from that hearing showing that Defendant opposed the motion when it was heard; on December 18, the court entered the order setting the case for trial on December 20. The case was set for trial more than fifteen days after the motion to set was filed, consistent with Local Rule 7.02.[2] The trial court did not abuse its discretion in setting the trial for December 20.

## B. The Motion *in Limine*

Citing Local Rule 5.01, Defendant argues that the trial court abused its discretion in hearing Plaintiff's motion *in limine* on the morning of trial; the motion sought to exclude copies of checks from March 7, 2014, to August 6, 2015, from Defendant's business bank account that Defendant intended to offer into evidence.[3] With respect to this motion, the Statement of the Evidence approved by the trial court states:

---

(b) In accordance with (Local) Rule 5, all pretrial motions including motions to exclude evidence must be filed in time to permit oral argument not later than the last regular motion day before the schedules trial date. No motions will be argued on the morning of the trial.

[2] The record also contains an earlier Order to Set which states:

This cause came on to be heard on October 10, 2017, upon plaintiff's motion for summary judgment. The Court found that this case had been pending for two (2) years. The Court observed that the parties have had ample time to complete discovery. The Court ordered that if plaintiff's motion for summary judgment were denied, then the case absolutely would have to be tried before the end of the year. The Court has denied plaintiff's motion for summary judgment. Plaintiff has attempted to obtain defendant's agreement as to one of the available trial days but defendant has declined to agree. Accordingly, this case should be scheduled for trial on December 20, 2017, at 9:00 a.m., pursuant to the Courts ruling on October 10, 2017.

It is, accordingly, ORDERED, ADJUDGED AND DECREED that this non-jury case be scheduled for trial on December 20, 2017, at 9:00 a.m.

This order shows that it was prepared by Plaintiff's counsel, was served on Defendant's counsel on November 15, received in the court's chambers and signed by the judge on November 16, and filed with the clerk on February 9, 2018. It is not clear from the record why the order was not entered until February.

[3] Rule 5.01 of the Rules of the Circuit and Chancery Courts for the Twenty-First Judicial District reads: "All pretrial motions must be filed and scheduled for hearing no later than the court's last regular motion day before the scheduled trial date. No motions, including motions *in limine* to exclude testimony, will be heard the day of trial."

4

In granting [Plaintiff's] motion in limine, the Court addressed the fact that [Defendant] had been given multiple opportunities to "put up or shut up." The Court noted that in denying [Plaintiff's] second motion for summary judgment, the Court allowed [Defendant] one last chance to get his proof together. The Court observed that the cancelled checks which [Defendant] only provided on the eve of trial were easily obtainable. [Defendant] should have been motivated to obtain this information since [Defendant] was aware that he was being charged finance charges during the pendency of this case. The Court questioned what it finally would take for someone to defend themselves by getting information that was so easy to obtain. The Court held that the Court had given [Defendant] every opportunity, even denying [Plaintiff's] second motion for summary judgment, for [Defendant] to timely gather his proof, but [Defendant] failed to take advantage of that opportunity.

A motion *in limine* refers to "'any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered,'" *Pullum v. Robinette*, 174 S.W.3d 124, 135 n. 11 (Tenn. Ct. App. 2004) (quoting *Luce v. U.S.*, 469 U.S. 38, 40 n. 2 (1984)). In our consideration of Defendant's contention, we are guided by the standard of review for a court's decision on a motion *in limine*:

With a few exceptions, . . . the trial court is given broad discretion in the timing of its decisions on the admissibility of evidence. . . . An appellate court will not reverse a trial court's decision on the admissibility of evidence, including a ruling on a motion *in limine,* absent clear abuse. Similarly, an appellate court will not reverse a trial court's exercise of discretion in ruling on an evidentiary motion *in limine* unless the trial court abused the wide discretion given it to handle such motions.

*Pullum*, 174 S.W.3d at 136-37 (citations omitted).

The trial court did not abuse its discretion in granting the motion *in limine.* The importance of the checks to the defense of the action should have been apparent to Defendant early on, since his defense was that the invoices had been paid. As noted in the ruling on the motion, Defendant had been given ample opportunity to file the checks in the response to discovery or the two motions for summary judgment. The case had been pending for two years, and Defendant has offered no explanation in the record or in his brief on appeal for the failure to produce the checks earlier. We discern no abuse of discretion in the trial court's exclusion of this proof.

### C. The Award of Attorney's Fees

The Defendant argues that the trial court abused its discretion in awarding $48,514.50 in attorney's fees. The Defendant contends that the trial court "merely

referenced the applicable rules but did not make any specific factual findings as to any factor."

In support of the application, counsel for Plaintiff filed an affidavit detailing the services performed and time spent, attesting that they had expended 129.8 hours in the litigation; they requested hourly rates of $450 and $300 for counsel and $135 for paralegals.[4] After reciting the factors at Tennessee Supreme Court Rule 8, Rules of Professional Responsibility 1.5,[5] counsel requested a total fee of $48,514.40.

The standard we apply in reviewing awards of counsel fees was set forth in *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011):

> [A] determination of attorney's fees is within the discretion of the trial court and will be upheld unless the trial court abuses its discretion. *Kline v. Eyrich,* 69 S.W.3d 197, 203 (Tenn. 2002); *Shamblin v. Sylvester,* 304 S.W.3d 320, 331 (Tenn. Ct. App. 2009). We presume that the trial court's discretionary decision is correct, and we consider the evidence in the light most favorable to the decision. *Henderson v. SAIA, Inc.,* 318 S.W.3d 328,

---

[4] The fees were broken down as follows:

| | |
|---|---|
| John R. Cheadle, Jr. | 65.7 hours @ $450 per hour |
| Mary Barnard Cheadle | 62.4 hours @ $300 per hour |
| Paralegals | 1.7 hours @ $135 per hour |

[5] Tennessee Supreme Court Rule 8, Rule of Professional Conduct ("RPC") 1.5 states in pertinent part:

(a) . . . The factors to be considered in determining the reasonableness of a fee include the following:
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
> (8) whether the fee is fixed or contingent;
> (9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
> (10) whether the fee agreement is in writing.

In *Wright ex rel. Wright v. Wright,* our Supreme Court held that a court is to apply these factors when it sets a reasonable attorney's fee. 337 S.W.3d 166, 176 (Tenn. 2011).

335 (Tenn. 2010); *Keisling v. Keisling,* 196 S.W.3d 703, 726 (Tenn. Ct. App. 2005).

The Tennessee Supreme Court has "acknowledge[ed] the importance of factors specified in the code of ethics," but has also cautioned that "'ultimately the reasonableness of the fee must depend upon the particular circumstances of the individual case.'" *Id.* at 177 (quoting *White v. McBride,* 937 S.W.2d 796, 800 (Tenn. 1996)).

As an initial matter we address Defendant's contention that the court erred in awarding the fee based on the "lodestar" method, which Defendant implies was rejected by our Supreme Court in *Wright* as the proper method for a court to determine a reasonable fee.[6]   To the contrary, the *Wright* court rejected the argument that the "lodestar" method should be the sole method of making the determination "because RPC 1.5(a) articulates a number of other factors that are also important to determining a reasonable attorney's fee." *Wright,* 337 S.W.3d at 180. Nothing in the *Wright* opinion indicates that the "lodestar" method is in any way inappropriate; to the contrary, the Court stated that its "decision should not be construed as diminishing the significance of the attorney's time and labor in determining a reasonable attorney's fee," which the court "anticipate[d] . . . will always be relevant in cases where the court is asked to determine a reasonable fee." *Id.* at 181.

In its ruling, the trial court stated that it had "applied the standards set out in Rule 8, Rules of the Supreme Court, Rules of Professional Conduct, Rule 1.5 Fees and finds that the fees sought by plaintiff's counsel in the amount of $48,514.50 are reasonable and necessary." The trial court did not make specific findings as to each of the factors at Rule 1.5; as a result, we review the record *de novo* with no presumption of correctness regarding the factors to determine where the preponderance of the evidence lies. *See Gooding v. Gooding*, 477 S.W.3d 774, 782–83 (Tenn. Ct. App. 2015)

The matters addressed in counsel's affidavit related to factors (1), (4), (5), and (8); as to the other factors, there was either no evidence submitted or the factor was not applicable.  Pertinent to factors (1), (4), (5), and (8), the affidavit set forth the time expended and services performed, the amount at issue, the duration of the litigation, as well as the fact that the fee was provided for in the contract upon which the account was governed.  Defendant did not submit any countervailing affidavit or other evidence in response to Plaintiff's counsels' affidavit.  In his brief on appeal, Defendant discusses each Rule 1.5 factor and argues that the court abused its discretion by erroneously assessing the evidence; he does not provide a cogent argument by which to conclude that the award was unreasonable.

---

[6] "In the lodestar calculation, the court multiplies the number of hours that the attorney has reasonably expended on the case times a reasonable or customary hourly rate." *Wright*, 337 S.W.3d at 179 (citing *United Med. Corp. v. Hohenwald Bank*, 703 S.W.2d 133, at 137 (Tenn. 1986); *In re Settlement/Guardianship of AGM*, 223 P.3d 1276, 1286 n.16 (Wash. Ct. App. 2010)).

The case was an action to collect a debt, liability for which was established by summary judgment granted in Plaintiff's favor in June of 2016, seven months after the complaint was filed; although the motion also sought a monetary judgment in the amount of $104,517.41, based on the affidavit Mr. Rains executed April 29, 2016, contesting the amount of the debt, the court held that the dispute made the amount of the liability inappropriate for summary judgment. In his affidavit, pertinent to this issue, Mr. Rains stated:

1. That I am the owner of Ag Services, a business located in Decatur County, Tennessee and was the owner at all times alleged in the Complaint filed by Plaintiff in the above style matter.

2. That I am familiar with the books and records of said business and would state that I have a factual dispute with Plaintiff over the amount Plaintiff claims is owing by me and my business. I have requested numerous times to be provided signed delivery tickets from Plaintiff to verify the products billed were in fact delivered to my business. The Plaintiff has not provided said tickets.

3. I have received the Plaintiffs responses to our First Set of Interrogatories and Production of Documents including the computer generated list of goods and products allegedly sold and delivered to my business and I dispute the amount owed and I dispute whether all the goods and products were delivered to my business.

4. My attorney has filed a Second Set of Production of Documents asking for the signed tickets which would reveal whether the goods were delivered to my place of business.

5. I have attempted to reconcile the documents provided by Plaintiff with my records and I am unable to determine the correct amount owing, due to incomplete or documents not being furnished to me by Plaintiff.

6. The alleged amount owing to Plaintiff is disputed and additional discovery will be necessary to determine the proper amount owed to the Plaintiff.

An affidavit Plaintiff's counsel filed with the first motion for summary judgment attested that Plaintiff's counsel fees were $15,677.61. Plaintiff's counsel's second affidavit, filed after trial, shows that, after the order granting summary judgment on the issue of liability was entered, counsel expended time preparing responses to Defendant's requests for interrogatories and production of documents, attending to various scheduling matters, preparing and filing the second motion for summary judgment, and conferring

8

with Plaintiff regarding the status of the case.[7] This evidence relates the question of the reasonableness and necessity of the services performed, as well as Rule 1.5 factors (1), (4), and (5). However, as the Plaintiff's second motion for summary judgment was unsuccessful, we are of the opinion that the award of attorney's fees should be modified to exclude time spent relative to the second motion for summary judgment. Accordingly, the hours for which the award should be based are as follows: John Cheadle 45.5 hours at $450.00 per hour, and Mary Cheadle 41.2 hours at $300.00 per hour, resulting in a modified award of attorney's fees totaling $32,835.

Mr. Rains additionally argues that twelve hours claimed by both counsel was duplicative. We have reviewed each entry on the affidavit where both of Plaintiff's counsel entered time for the same service and do not conclude that those entries were duplicative of each other.[8] We also conclude that the court did not abuse its discretion in making the award at the hourly rate in effect when the order was entered, rather than the rate in effect when the services were performed.[9] As noted earlier in this opinion, substantial delay in the resolution of this case was due to the failure of Defendant to produce documents pertinent to his defense until the day before the trial; indeed, the court denied summary judgment to Plaintiff on two occasions in light of Defendant's representations that his defense had merit. Mr. Rains acknowledged in his affidavit that he had received Plaintiff's responses to his discovery requests, and the record shows that Plaintiff responded to the second request for documents, referenced in paragraph 5 of Mr. Rains' affidavit. There is nothing in the record from which to conclude that Plaintiff was dilatory in the prosecution of this action or contributed to the delay in getting it resolved, and awarding fees at the rate in effect when the award is made compensates for the delay in payment.[10]

---

[7] Mr. Rains executed a second affidavit on August 30, 2017, acknowledging receipt of documents from Plaintiff on July 7 and July 28, 2017.

[8] For instance, it is entirely appropriate for both counsel to participate in telephone conferences with counsel for Defendant or to receive and review the various pleadings and orders; we have not identified nor been cited to instances of double billing.

[9] Between the filing of the first affidavit and the second affidavit, Plaintiff's counsel's hourly rates had both increased by $25.00.

[10] *See, e.g., Missouri v. Jenkins by Agyei*, 491 U.S. 274, 282–83 (1989):

> When plaintiffs' entitlement to attorney's fees depends on success, their lawyers are not paid until a favorable decision finally eventuates, which may be years later.... Meanwhile, their expenses of doing business continue and must be met. In setting fees for prevailing counsel, the courts have regularly recognized the delay factor, either by basing the award on current rates or by adjusting the fee based on historical rates to reflect its present value. See, *e.g., Sierra Club v. EPA,* 248 U.S.App.D.C. 107, 120–121, 769 F.2d 796, 809–810 (1985); *Louisville Black Police Officers Organization, Inc. v. Louisville,* 700 F.2d 268, 276, 281 (CA6 1983). Although delay and the risk of nonpayment are often

### III. CONCLUSION

For the foregoing reasons, we reduce the award of attorney's fees to $32,835; in all other respects the judgment is affirmed.

_____
RICHARD H. DINKINS, JUDGE

---

mentioned in the same breath, adjusting for the former is a distinct issue.... We do not suggest ... that adjustments for delay are inconsistent with the typical fee-shifting statute." *Id.,* at 716, 107 S.Ct., at 3082.